Fitch and Another *v.* The City of Madison and Another.

City of Madison. — Taxation.— The charter of the City of *Madison* provides that a tax for municipal purposes may be assessed upon all personal property owned by, or in the possession of, any inhabitant of the city, "except goods and produce for export, or in transit." A, being engaged in pork packing in said city, and having all of his capital invested in pork held for export, and in process of shipment to a foreign market, refused to return the same for taxation, and was thereupon assessed for "capital invested in pork, $50,000," and taxes charged against him upon that sum.

*Held,* that the assessment was illegal, because the property, if taxable, should have been assessed as pork, and not as "capital."

*Held,* also, that the pork, being "produce for export," was not subject to taxation under the city charter.

*The City of Madison et al.* v. *Fitch et al.,* 18 Ind. 33, overruled.

APPEAL from the *Jefferson* Circuit Court.

Elliott, C. J.— The appellants filed their complaint in the Circuit Court to enjoin the collection of certain city taxes, alleged to have been illegally assessed against them. A demurrer was sustained to the complaint. The principal question raised is as to the power of the city, under its charter, to levy a tax on the capital invested by the appellants in pork, for export to a foreign market.

The facts alleged in the complaint, so far as it is necessary to state them for the purpose of a proper understanding of the question, are these: *Fitch & Son* were residents of the *City of Madison, Ind.*, and, for several years, were

engaged in the business of buying, slaughtering and pack-
ing pork, which they shipped to, and sold in, a foreign
market.   They had from thirty to thirty-five thousand
dollars of capital invested in the business in the years 1860
and 1861.   Between the 1st of *April* and the 1st of *July*
of those years, their entire capital was invested in pork,
then ready for, and in process of, transportation.   They had
no money on hand during that period.   In the month of
*May* of each of those years, they were called upon by the
city assessor for a list of their personal property subject to
taxation for city purposes, but they informed the assessor
that they had no personal property subject to taxation by
the city ; that their entire capital was then invested in
pork for export, which they claimed was not subject
to taxation by the city.   But the assessor, afterward, without
their knowledge or consent, each of said years, entered
upon his assessment roll, and assessed against them, as
"capital invested in pork, $50,000."   Upon this sum, the
city council made a levy for the year 1860 of ninety-five
cents on each $100, and for the year 1861 of seventy-five
cents on each $100.   The city collector was proceeding
to levy and collect the same by a sale of their personal
property.

The city is governed by a special charter granted in
1848, and amended in 1849.   The original charter subjected
to taxation " all real estate, including improvements, situate
within the corporate limits of said city ; and also a like tax
upon *all personal property* belonging to the residents of
said city, or *that may be in the possession of said residents.*"
The charter as amended in 1849, subjects to be taxed,
all real estate, &c., and all personal property, except "goods
and *produce for export, or in transit,* owned by, or in the pos-
session of, any inhabitant of the city," &c.

.  The assessments in this case, of "capital invested in
pork," are clearly illegal.   The charter authorizes the city to
levy a tax on "*personal property,*" not on the capital
invested in a particular business, or in specific property.

Money on hand is personal property, and, if not exempt, is liable to be taxed as such, but when it is invested in other personal property it is no longer money. Here it is shown by the complaint, that at the time of these assessments, *Fitch & Son* had in their possession, in the city of *Madison,* a large amount of pork, greatly exceeding in value their actual capital, or the amount assessed against them. Their entire capital was invested in the pork, and if subject to a city tax it was as pork, and not as capital invested in pork. If the pork was liable to be taxed, the whole, and not merely a part of it, was so liable. The assessment of "capital invested in pork" was not authorized by the city charter, and is, therefore, illegal.

But, under the averments in the complaint, was the pork in possession of *Fitch & Son* liable to be taxed? The solution of this question depends upon the meaning of the words, "goods and produce for export," as used in the amended charter.

This question was presented to this court in a former case between the same parties, and is reported in 18 Ind. 33. And while we fully concur in the principle laid down by the court in that case, that "it is a settled rule that laws exempting property from taxation are to be strictly construed," we cannot concur in the conclusions arrived at by the court in the application of that principle to the case under consideration. Indeed, it seems apparent that a very full consideration was not given to the question in that case.

By the charter of the city, personal property in the possession of a resident of the city, between the 1st of *April* and the 1st of *July* of the same year, and subject to taxation, is liable to be assessed for the current year. In the case at bar, it is averred in the complaint that *Fitch & Son,* during all that time, had no money or other personal property except their pork, all of which was for export, and was then in process of being exported to a foreign market. *Pork* is clearly included within the word *produce,*

used in the exception in the amended charter. It was, then, *"produce for export,"* and within the very letter of the statute.

*Madison* is a commercial city; many of her citizens were engaged in trade and commerce; in purchasing the products of the surrounding country, brought there for market by the railroads and other means of conveyance, and in exporting or shipping them by the river to *New Orleans* and other distant markets, beyond the limits of the state. It was the common interest of the city that this trade and commerce should be encouraged, as it aided in bringing to the city both population and wealth. And it is proper that the amendment of the charter, which we may infer was enacted at the request, or with the assent, of the people of that city, or their representatives, should be construed in the light of these surroundings.

Under the original charter, all personal property *owned by, or in the possession of,* a resident of the city, was subject to be taxed. Under that provision, the resident dealer in produce was not only taxed to the extent of the capital used by him in his business, but he was taxed on all the property in his possession, whether owned by himself or others, while the non-resident dealer would not be liable to be taxed at all. This discrimination would necessarily operate onerously on the resident dealer. Under these circumstances the amendment was adopted, providing that taxes might be levied on all personal property owned by a resident, except *"goods and produce for export,* or in transit, owned by, or in the possession of, any inhabitant of the city."* The original charter taxed the produce owned by the resident dealer, though held for export. This provision was evidently deemed unjust or wrong, otherwise no amendment would have been regarded as necessary. The amendment, however, was made, and by its terms exempts from taxation *goods and produce for export,* or in transit, owned by, or in the possession of, any inhabitant of the city.

As a matter of policy, the exemption may go too far, though it only placed the resident dealer on an equality with the non-resident one ; but that was a proper matter for the legislature.

We think that the pork owned by the appellants *for export*, was exempt by both the letter and spirit of the amended charter, and that the court below erred in sustaining the demurrer to the complaint.

The judgment is reversed, with costs, and the cause remanded to the Circuit Court for further proceedings in accordance with this opinion.

*C. E. Walker* and *M. G. Bright*, for appellants.

*J. Sullivan,* for appellees.