# CITY OF ST. LOUIS v. MEYER, Appellant.

**Division Two, December 24, 1904.**

1. **CITIES: Powers.** The charter of a city must always be in harmony with and subject to the Constitution and laws of the State.

2. ———: ———: **St. Louis: Licenses.** The city of St. Louis has no power under its charter to assess, levy or collect taxes or licenses inconsistent with the laws and Constitution of the State.

3. ———: ———: **Peddler.** If a farmer who sells the products of his farm along the streets of a city is not a peddler within the meaning of the statute, the city can not by ordinance make him one.

4. ———: ———: ———: **Farmer.** In view of the statute (sec. 8861, R. S. 1899) which excepts those who go "about from place to place . . . selling . . . agricultural and horticultural products, including milk, butter, eggs and cheese" from those thereby "declared to be peddlers," neither the city of St. Louis nor any other city can by ordinance punish a farmer who sells the products of his farm or garden or dairy or poultry yard along the street, by public outcry or previous order, without having first obtained a license from the city so to do, by enacting an ordinance declaring those who "sell or offer to sell in any wagon, vehicle or other conveyance, drawn by hand or otherwise, by outcry or going from place to place in the city, any fruit, vegetables, poultry, game, ice-cream, or other articles of food" to be peddlers or hawkers. That statute is not limited by its operation to that part of the State outside of municipal corporations, but is applicable to every citizen of the State, and its force and vitality cannot be limited by municipal authority.

5. ———: ———: ———: **Hawker.** The terms "peddler" and "hawker" are equivalent in law. And where the statute declares that a farmer who goes about from place to place selling the products of his farm is not a peddler, a city cannot by an ordinance declaring such person to be a hawker, force him to take out a city license to make such sales or be subject to a fine.

6. ——: ——: **Limited by Subsequent Statute.** The fact that the statute relieving farmers selling their eggs, butter, milk, or other agricultural products from the duty of obtaining a peddler's license was passed after the adoption of the charter of St. Louis, does not make unavailing that statute as a defense when a farmer is prosecuted for making sales of such things without a license. The Constitution commits to local self-government matters of purely municipal or local concern, and as to matters of that kind the charter can be amended only by the people. But if the matter embraced within a statute is one in which the people of the entire State have an interest or is a subject to which general legislation may be directed, the fact that it amends the charter of the city does not make its provisions unavailing to any one affected thereby.

7. ——: ——: **Farmer: Peddler or Hawker?** A farmer residing in the country outside of an incorporated city, who loads his wagon with the products of his farm and takes them into the city for sale, and disposes of them to its inhabitants as he goes from place to place therein offering them for sale, is not a peddler or a hawker within the meaning of the statute, but a farmer, and under the statute (sec. 6146, R. S. 1899) no incorporated city has power to levy or collect any tax, license or fees from any farmer for the sale of produce raised by him or on the sales made by him of such produce.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. Hiram N. Moore,* Judge.

REVERSED.

*George W. Lubke, Jr., William F. Broadhead* and *William T. Jones* for appellant.

(1) The city of St. Louis is without power to enact any ordinances not in harmony with and subject to the Constitution and the laws of the State of Missouri. Constitution, secs. 23, 25, art. 9; charter of St. Louis, art. 3, sec. 26, pars. 1, 5 and 14; R. S. 1899, pp. 2484-2488; R. S. 1899, sec. 6258; Trenton v. Clayton, 50 Mo. App. 539; Moberly v. Hoover, 93 Mo. App. 666; Kansas City v. Hallett, 59 Mo. App. 160; Ewing v. Hoblitzelle, 85 Mo. 64; Badgley v. St. Louis, 149 Mo. 122. (2) Under the laws of this State the defendant, being a farmer, engaged in selling his own produce, raised on

his farm, was not a peddler or hawker, and the ordinances in question can not affect him, his property or his calling. R. S. 1899, sec. 8861; Emert v. Missouri, 156 U. S. 308; Trenton v. Clayton, 50 Mo. App. 535; Moberly v. Hoover, 93 Mo. App. 663; St. Charles v. Nolle, 51 Mo. 122; 15 Am. and Eng. Ency. Law, p. 291 and notes, and 294; 2 Rapalje & Lawrence, Law Dictionary, p. 595. (3) The ordinances under which defendant was fined, so far as he is concerned, are in conflict with the Constitution of the State of Missouri, the charter of city of St. Louis and the general laws of the State, and conferred no authority upon the court to inflict fine upon him. R. S. 1899, sec. 6146, p. 1440 (Laws 1873, p. 93).

*Charles W. Bates* and *Charles R. Skinker* for respondent.

(1) The city of St. Louis had the power to enact ordinance 2097. Charter, art. 3, sec. 26, par. 5. (2) The object of the ordinance was to regulate and control hawkers and peddlers. Emert v. Missouri, 156 U. S. 308; Atty.-Gen. v. Tongue, 12 Price 60; St. Louis v. McCann, 157 Mo. 301. Any license fee required by ordinance 2097 is a tax upon an occupation, which kind of tax the city has the right to exact. St. Louis v. Green, 7 Mo. App. 470; St. Louis v. Sternberg, 69 Mo. 302; St. Louis v. Weitzel, 130 Mo. 619. (3) It was competent for the municipal assembly to define "hawkers" as used in the charter and ordinances. St. Louis v. Weitzel, supra. (4) Appellant was a "hawker" within the definition of ordinance 2099. (5) Section 8861, Revised Statutes 1899, is no bar to the exaction of the license required by ordinance 2097. Harrison v. State, 9 Mo. 526; Austin v. State, 10 Mo. 595; State v. Sherman, 50 Mo. 265; State v. Harper, 58 Mo. 530. (6) There is no inconsistency between section 8861 and ordinances 2097-2099. Commonwealth v. Farnum, 114

Mass. 270; Century Dictionary, "Hawker;" St. Louis
v. Weitzel, supra. Section 8861, having been enacted
subsequently to the charter, can not change the defini-
tion of the word "hawker" in the charter. St. Louis
v. Dorr, 145 Mo. 466. (7) Section 6146, Revised Stat-
utes 1899, is not a bar to the exaction of the license
under ordinance 2097. Nicol v. Ames, 173 U. S. 509;
St. Louis v. Weitzel, supra; Hogan v. Indianapolis, 65
N. E. 525; 9 Mun. Corp. Cas. 273; Mayor, etc., v.
Holczstein, 32 So. 1007; 9 Mun. Corp. Cas. 278.

FOX, J.—This was a proceeding instituted by the
city attorney of the city of St. Louis against the defend-
ant, under the provisions of sections 2097, 2098, 2099,
and 2108 of the Municipal Code of the city of St. Louis.
The city attorney's statement was as follows:

"State of Missouri, city of St. Louis, ss.:

"City of St. Louis, Missouri, December 17, A. D.
1903.

"Henry Meyer, to the city of St. Louis, Dr.

"To five hundred dollars for the violation of an
ordinance of said city, entitled, 'An ordinance in revis-
ion of the General Ordinances of the city of St. Louis,'
being ordinance number 19991, sections 2097, 2098,
2099, and 2108, approved April 3, 1900.

"In this, to-wit: In the city of St. Louis and State
of Missouri, on the twelfth day of September, 1903,
and on divers other days and times prior thereto, the
said Henry Meyer did then and there cause a large
amount of fruit, vegetables, poultry and other articles
of food to be drawn in a wagon by horses from place
to place along the public streets of the city aforesaid,
and while being so drawn the said Henry Meyer did
offer the same for sale, by outcry, along said route and
by soliciting the residents of said streets to purchase
said goods from the wagon aforesaid, and did sell veg-
etables from same without first having procured a
license from the license collector of aforesaid city so to

do, contrary to the ordinance in such case made and provided."

This suit was begun before the police justice for the first district of said city, who fined the defendant twenty-five dollars. The defendant appealed to the St. Louis Court of Criminal Correction, where the case was tried upon the seventh day of January, 1904, and the defendant was fined twenty-five dollars. The defendant filed his motion for a new trial on the same day that he was fined and the same was then overruled by the court, and defendant then tendered his bill of exceptions, which was approved, signed and filed on said day, and defendant filed his affidavit for an appeal, and was allowed an appeal to this court.

This cause was submitted in the St. Louis Court of Criminal Correction upon the following agreed statement of facts:

"The defendant is a resident of St. Louis county, Missouri, and is now and for many years has been cultivating a farm in said county as its proprietor. Upon this farm he has for many years past continuously raised apples, potatoes, tomatoes, grapes and like fruits and vegetables; he has also raised chickens and kept milk cows thereon. He has also continuously during this period made it a practice of selling the fruits and vegetables so grown by him, also poultry and eggs, and his milk and butter and cheese, the product of his cows, within the city limits of the city of St. Louis, by loading said products so produced or raised by him into his wagon, hauling them either in person or by employee into said city, and passing along the streets of said city, and selling or offering to sell such products in small quantities from his wagon, either from place to place or by outcry, to whomsoever would buy. He would continue so selling his products on any trip made in said city until the contents of his load had been disposed of. He was in the habit of coming with or sending his products for sale in the manner aforesaid

to the city several days each week during a period of about six months each year. Some of the sales made by defendant as aforesaid were made to regular customers, but without previous specific orders therefor; and in some instances his products were delivered upon previous orders.

"Defendant, on the first day of September, 1903, drove his wagon into the city of St. Louis, Missouri, loaded with the products of his farm in St. Louis county, Missouri, consisting of vegetables, fruits, berries, milk and butter, all produced by himself on said farm, for sale, all of which products he sold in small quantities to various persons, householders in said city, for private consumption, along the streets in the first district of said city, and from place to place, by delivering the produce as sold from his wagon.

"Defendant, on the third day of September, 1903, drove his wagon into the city of St. Louis, Missouri, with the products of his farm in St. Louis county, Missouri, consisting of vegetables, fruits, berries, milk and butter, all produced by himself on said farm, for sale, all of which produce he sold in small quantities to various persons, householders in said city, for private consumption, along the streets of the first district of said city, and from place to place, by outcry, delivering the produce as sold from his wagon.

"Defendant, on the 5th day of September, 1903, drove his wagon into the city of St. Louis, Missouri, loaded with the products of his farm in St. Louis county, Missouri, all consisting of vegetables, fruits, berries, milk and butter, all produced by himself on said farm, for sale, all of which produce he in small quantities sold to various persons, householders in said city, for private consumption, and delivered the same from his wagon, stationed on Broadway, in the first district of said city of St. Louis, as customers demanded said products at said wagon.

"Defendant, on the seventh day of September,

1903, drove his wagon into the city of St. Louis, Missouri, loaded with the products of his farm in St. Louis county, Missouri, all consisting of vegetables, fruit and berries, all produced by himself on said farm, for sale, all of which produce he sold in quantities of a bushel or more, to various grocers and butchers, dealers in farm produce, at various points within the first district of said city of St. Louis, delivering said products as sold from said wagon.

"Defendant, on the ninth day of September, 1903, drove his wagon into the city of St. Louis, Missouri, loaded with the products of his farm in St. Louis county, Missouri, all produced by himself, consisting of vegetables, fruit, berries, milk and butter, all of which products he sold and delivered in small quantities to various persons resident in said city, upon previous orders given him therefor.

"Patrick J. Clifford was at the time of said acts of defendant license collector for said city of St. Louis, duly elected and qualified as such, and for more than a year prior thereto had been such license collector, and defendant had no license as a peddler or hawker issued to him by said Clifford as such license collector at the time of the performance of the acts by the defendant aforesaid. Said defendant had at no time mentioned in this agreed statement of facts applied for or secured a license as required by the ordinances pleaded.

"The plaintiff also offered in evidence sections 2097, 2098, 2099, and 2108, of the Revised Ordinances of the city of St. Louis, which are in words and figures as follows, to-wit:

" 'Section 2097. *License Required.*—It shall not be lawful for any person to carry on the business of a peddler or hawker without obtaining a license therefor, and any person who shall so carry on the business of peddler or hawker without first having obtained a license, shall be deemed guilty of a misdemeanor, and,

upon conviction thereof, shall pay a fine of not less than twenty-five dollars, nor more than one hundred dollars.' (Ord. 19703, amendment.)

" 'Section 2098. *Peddlers Defined.*—Every person who shall deal in the selling of patent or other medicines, goods, wares and merchandise, except books, charts, maps and stationery, is declared to be a peddler.' (R. O. 1892, sec. 1526.)

" 'Section 2099. *Hawkers Defined.*—Any person who sells or offers for sale in any wagon, vehicle or other conveyance, drawn by hand or otherwise, in streets, alleys or other thoroughfares or public places, by outcry or by going from place to place in the city, any fruit, vegetables, poultry, game, and ice cream, or other articles of food, is hereby declared to be a hawker.' (Ord. 19329, amendment.)

" 'Section 2108. *Penalty.*—Any violation of any section of this article, for which a penalty is not provided [for], shall be deemed to be a misdemeanor, and the person or persons deemed guilty thereof, and upon conviction before either of the police justices of this city, shall be fined in a sum not less than fifty nor more than five hundred dollars for each and every violation, to be collected and paid as provided by charter and ordinance.' (R. O. 1892, sec. 1534.)"

Upon the agreed statement of facts, herein reproduced, the defendant requested the court to declare the law as follows:

"The court declares the law to be that upon the evidence submitted, the defendant is not guilty as charged in the statement of the city attorney filed herein."

Which was by the court refused, to which action of the court, defendant then and there duly excepted.

The case thereupon being submitted to the court, and the court having considered the same, found the defendant guilty as charged in the statement of the city attorney, and assessed his fine at the sum of

twenty-five dollars, and judgment was rendered in accordance with such finding.

Defendant's motion for new trial being overruled, he in due time and proper form prosecuted his appeal to this court from the judgment herein rendered, and the cause is now before us for consideration.

#### OPINION.

The record in this cause presents two propositions for solution:

First.   It is insisted that sections 2098 and 2099, of the ordinances of the city of St. Louis, upon which this prosecution is based, are invalid or at least inapplicable to this defendant, because they are not in harmony with the Constitution and general laws of this State.

Second.   Because said ordinances are inconsistent with and in conflict with section 6146, Revised Statutes 1899.

At the very threshold of the consideration of the propositions involved in this controversy, it is well to note the conceded and well-settled principles of municipal government, which is the basis or foundation upon which the argument of learned counsel for appellant, as well as respondent, is predicated.  The mandate of the organic law of the State is, that the charter and amendment of municipal corporations shall always be in harmony with and subject to the Constitution and laws of the State.   [Sec. 23, art. 9, Const. of Mo.]

This constitutional provision is recognized by the charter of the city of St. Louis, wherein it is substantially provided that the mayor and assembly shall have power by ordinance, not inconsistent with the Constitution or any laws of this State, to assess, levy and collect all taxes and licenses, etc.   [Art. 3, sec. 26, St. Louis Charter.]

As emphasizing the constitutional limitations and restrictions upon the powers of municipal governments,

the lawmaking power of the State has spoken in no doubtful or uncertain terms. It is provided that, "Any municipal corporation in this State, whether under general or special charter, and having authority to pass ordinances regulating subjects, matters and things upon which there is a general law of the State, unless otherwise prescribed or authorized by some special provision of its charter, shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the State law upon the same subject." [Sec. 6258, R. S. 1899.]

It will be observed that the agreed statement of facts locates the defendant, and fixes the nature and character of business he was conducting; it is thus stated: "The defendant is a resident of St. Louis county, Missouri, and is now and for many years has been cultivating a farm in said county as its proprietor. Upon this farm he has for many years past continuously raised apples, potatoes, tomatoes, grapes and like fruits and vegetables; he has also raised chickens and kept milk cows thereon. He has also continuously during this period made it a practice of selling the fruits and vegetables so grown by him, also poultry, and eggs, and his milk and butter and cheese, the product of his cows, within the city limits of the city of St. Louis, by loading said products so produced or raised by him into his wagon, hauling them either in person or by employee into said city, and passing along the streets of said city, and selling or offering to sell such products in small quantities from his wagon, either from place to place or by outcry, to whomsoever would buy. He would continue so selling his products on any trip made in said city until the contents of his load had been disposed of. He was in the habit of coming with or sending his products for sale in the manner aforesaid to the city several days each week during a period of about six months each year. Some of the sales made by defendant as aforesaid were made to

regular customers, but without previous specific orders therefor; and in some instances his products were delivered upon previous orders."

In the consideration of the questions presented in this cause, we are not left without light upon the subject; counsel have favored us with able and carefully prepared briefs, presenting their views upon the propositions before us.

The first proposition to be settled in this dispute is this: "Has the State, by a general enactment of the Legislature, manifested a policy upon the character of business in which defendant was engaged?" If so, the city of St. Louis is restricted to the exercise of only such jurisdiction as is consistent with and in harmony with the policy of the State so manifested.

Section 8861, Revised Statutes 1899, provides: "Whoever shall deal in the selling of patents, patent rights, patent or other medicines, lightning rods, goods, wares or merchandise, excepting pianos, organs, sewing machines, books, charts, maps and stationery, agricultural and horticultural products, including milk, butter, eggs and cheese, by going about from place to place to sell the same, is declared to be a peddler."

The power of a municipal corporation to enforce an ordinance which includes a class of persons embraced within the exception of the statutes, was in judgment before the Kansas City Court of Appeals in Moberly v. Hoover, 93 Mo. App. 663. The statement in that case charges the defendant with peddling books in the city, without first having obtained a license. It was ruled that a person who goes about from place to place to sell books is not embraced within the signification of the term peddler, as defined by section 8861, supra. Proceeding to the disposition of the question presented, SMITH, J., speaking for the court, said:

"A construction of said ordinance which would make a peddler of one going about from place to place,

within the territorial limits of the plaintiff, offering for sale books, would render it out of harmony with the provisions of the statute on the same subject from which we have quoted. The rule is, that when it can be seen that the exercise of any jurisdiction by a municipal corporation can not be brought within the scope of the grant of. its powers without a conflict with the laws of the State the exercise of such jurisdiction can not be allowed. [Kansas City v. Neal, 49 Mo. App. 72; St. Louis v. Bentz, 11 Mo. 61; St. Louis v. Schoenbusch, 95 Mo. 618.]

"As was said by us in Kansas City v. Hallett, 59 Mo. App. 160: 'The by-laws of a municipal corporation in order to be of any validity must be consistent with its charter and the general statutes of the State creating it. This is the well-understood principle of the common law. Such by-laws must not be repugnant to the legislative policy of the State so manifested by its general enactments.' [Citing Dillon on Munic. Corp. (4 Ed.), sec. 329; Tiedeman on Corp., sec. 150.]"

To the same effect is Town of Trenton v. Clayton, 50 Mo. App. 535. These cases clearly and correctly stated the law applicable to the proposition involved.

It is, however, earnestly urged by learned counsel for respondent that the terms of the statute should be limited to a manifestation of its policy as to subjects of taxation for State purposes only, for the reason that chapter 140, of which section 8861 forms a part, nowhere evinces an intention to define who are or who are not peddlers for the purpose of prohibiting municipalities from exacting a license from such persons, and that no prohibitory terms are used in the statute against municipalities exacting a peddler's license from the class of persons. embraced within the exception to the statute. It is apparent that the same reasons may be applied and can be urged as to persons who are within the exception, who go from place to place peddling books, and doubtless were presented in Moberly v.

Hoover, supra. The contention was fully answered in that case, and we see no reason to depart from it.

Following the rule as announced by the Kansas City Court of Appeals in the cases herein cited (and they are not in conflict with any ruling of this court, nor have the principles announced in any way been criticised) the defendant, in conducting the business as indicated by the agreed statement of facts, was not a *peddler* within the terms of the statute, and the city of St. Louis, by ordinance or otherwise, was not authorized to make him one. Chapter 140, Revised Statutes 1899, in which section 8861 is embraced, is a general law, treating of the subject of peddlers and the method of licensing them to transact their business. This general law is applicable to every citizen of the State, and its force and vitality can not be limited by municipal authority.

The municipal corporation is powerless, by definition or otherwise, to embrace in an ordinance a class of persons as peddlers, and subject them to penalties for the violation of this ordinance, who by a general law of the State are within the exception of the terms of the statute defining the class who are in fact peddlers. It may be that the ordinance might include a class not embraced in the statute, but about that it is unnecessary to express an opinion; but it is certainly clear that a class can not be embraced in the ordinance that the statute expressly eliminates from the class defined by the statute to be peddlers.

It is insisted by respondent that if defendant was not a peddler, he was a hawker, and is, therefore, subject to the penalties imposed by the ordinance for failure to obtain a license as a hawker. The terms *peddler and hawker*, by the courts of this country, wherever they have been called upon to consider them, have been treated as equivalent in law. The Am. and Eng. Ency. of Law (2 Ed.), vol. 15, p. 291, treating of these subjects, says: "Hawkers and peddlers are persons who

practice carrying merchandise about from place to place for sale, as opposed to traders who sell at established shops. Throughout the United States and Canada, generally, the words 'hawker' and 'peddler' are considered equivalent in law, the term 'peddler' being more used at the present day."

In Hall v. State, 39 Fla. l. c. 668, upon it being urged that there was a distinction between peddler and hawker, the court said:

"We have failed to find a single case at law where the supposed distinction pointed out by plaintiff in error has ever been enforced, or even recognized, except in the remarks of Chief Justice SHAW, in the case of Commonwealth v. Ober, 12 Cush. 493, where he said, 'The leading primary idea of a hawker and peddler is that of an itinerant or travelling trader who carries goods about in order to sell them, and who actually sells them to purchasers, in contradistinction to a trader who has goods for sale, and sells them in a fixed place of business. Superadded to this (though, perhaps, not essential) by a "hawker" is generally understood one who not only carries goods for sale, but seeks for purchasers either by outcry, which some lexicographers conceive as intimated by the derivation of the word, or by attracting notice and attention to them as goods for sale by actual exhibition or exposure of them, by placards or labels, or by a conventional signal, like the sound of a horn for the sale of fish.' It is there admitted, however, that the distinction drawn is not essential, and all of the standard dictionaries to which we have access give one definition of the word peddler as 'a hawker,' and *vice versa*. See the Century and Webster's International, titles, Hawker, Peddler. So in many definitions of the terms by the courts and text-writers, the words are regarded as synonymous when undefined by statute. [Bishop's Statutory Crimes, sec. 1074; Fisher v. Patterson, 13 Pa. St. 336; City of South Bend v. Martin, 142 Ind. 31, 41 N. E. 315,

29 L. R. A. 531; Emert v. Missouri, 156 U. S. 296, 15 Sup. Ct. Rep. 367.]''

It follows that if defendant, in selling his products in the manner as shown by the agreed statement, was not a peddler under the general law of the State, and no license could be exacted of him for doing that character of business, then we take it that a municipality can not, for conducting the same character of business, exact a license from him, simply by calling him a *hawker*. The general law of the State has indicated, in no doubtful or uncertain terms, that no license shall be exacted from persons engaged in the character of business indicated by the agreed statement. Whether defendant be defined as peddler or hawker, an ordinance which undertakes to exact a license from him is not in harmony with the policy of the State as manifested by its general laws upon the subject, and as was said by the court in Trenton v. Clayton, supra: ''As the municipal corporation can not legislate regarding any subject-matter unless so authorized by the State, so is the corporation powerless to extend or widen the scope of its powers by the arbitrary and unauthorized definition of words or terms, so as to include more than was intended by the Legislature.''

It is insisted by counsel for respondent that the exceptions contained in section 8861, which embraces the class in which defendant must be placed, can be of no avail to appellant, for the reason that the exception, as applicable to him, was not enacted until long after the adoption of the charter of the city of St. Louis; and it is argued that to apply the exception to him would in effect be amending the charter, which can only be done by a vote of the people. In support of this contention, we are cited to the case of St. Louis v. Dorr, 145 Mo. 466. An analysis of that case will demonstrate its want of application to the question involved in the case at bar. ''Matters of purely municipal and local concern the Constitution intended to

commit to local self-government,'' and the boulevard act, involved in that case, was a subject of strictly municipal concern. That is not this case; the regulation and licensing of peddlers and hawkers is not a subject which can be limited to one of strictly municipal concern. It is one in which the people of the entire State have an interest, and is a subject to which general legislation may be directed, and when the State speaks upon the subject by a general enactment its force and vitality are not limited to any particular locality. This much was conceded by the learned judge in the Dorr case. He said: ''In respect of those topics which involve the relations of the city to the State, there can be no doubt that the legislative power of the State may properly be exercised over the city of St. Louis, as has been done in many instances disclosed by decisions in the Missouri Reports. . . . The General Assembly has, furthermore, undoubted power to legislate for St. Louis, as for all other cities, in the full exercise of the police power of the State, as well as to enforce direct mandates of the fundamental law by appropriate statutes, and to pass all proper laws that are general throughout the State. State ex rel. Ziegenhein v. Railroad (1893), 117 Mo. 1 (22 S. W. 910), affords an illustration of legislation of the latter sort. In that case a law intended to prescribe rules for assessing railroad property throughout the State was held applicable to St. Louis and operative to repeal charter provisions on that subject.''

This leads us to the only remaining proposition presented by the record in this cause. It is insisted by appellant that the ordinances upon which this prosecution is predicated are invalid, because they are in direct conflict with section 6146, Revised Statutes 1899. On the other hand, it is contended by respondent that the license exacted by the ordinances is for the privilege of carrying on the business of hawker or peddler;

in other words, that it is a tax upon occupations. Upon this proposition we will say that, under the agreed statement of facts, in our opinion the defendant was neither a peddler nor a hawker in contemplation of the law regulating persons engaged in the business of peddling or hawking.

The facts upon which this case was tried conceded that the defendant was a farmer, residing in St. Louis county, and that he simply loaded his wagon with products from his farm, and took them into the city of St. Louis for sale; that in disposing of his products, he went from place to place among the inhabitants of the city, offering them for sale and selling them.

It will be observed that section 2097 or ordinance 19703 is directed against persons who carry on the business of a peddler or hawker; in other words, a license must be obtained by those persons who engage in the *business* of peddling or hawking. In order to subject the defendant to the penalties imposed by the ordinance, it must be manifest that his *business* was that of a peddler or hawker. This proposition is simply narrowed down to the question: Was the defendant a *peddler or hawker,* within the common and well-understood signification of those terms? We have reached the conclusion that he was not. The agreed statement of facts upon which this cause was submitted to the trial court leaves no doubt as to the character of business in which defendant was engaged. It was that of a *farmer,* and the mere fact that he went from place to place, similar to that of peddler or hawker, to dispose of the fruits of his business, by no means is sufficient to warrant the adding to his name as farmer that of peddler or hawker. The disposition of the products of his farm in the manner indicated by the facts in evidence must be treated as a mere incident to his business of farming. The statute recognizes this distinction. Section 6146, supra, substantially provides

that no incorporated city shall have power to levy or collect any tax, license or fees from *any farmer* for the sale of produce raised by him, etc., etc.

This is a clear recognition of the distinction between the *business* of peddling or hawking and that of farming and disposing of the products of the farm, and in our opinion is an absolute prohibition against the exaction of the license provided for by the ordinance.

In Commonwealth v. Gardner, 133 Pa. St. 1. c. 290, Mr. Justice WILLIAMS, speaking for that court, very clearly declares the law upon the proposition now before us. In discussing the question as to the class of persons and business to which the term peddler or hawker was applicable, he thus very aptly stated the views of that court:

"I do not regard the sale of the natural products of the soil by the farmer or gardener by whom they are raised, as affected by the laws relating to peddlers. Farmers are not within the mischief which these laws were intended to remedy, except as they are the victims of that mischief. They are not traders or travellers in any legal sense. The carriage of the surplus products of the farm or garden to a market town, or from house to house, is not peddling, but is incidental to their business as farmers. Peddlers are forbidden to sell 'goods, wares and merchandise.' These words were never intended to include farm products in the hands of the farmer; nor is the transportation of such products to a market for sale, or to regular customers who are supplied by the grower, the sort of business at which the laws relating to peddling are directed."

This case finds support from the courts of many other States. In Burr & Co. v. City of Atlanta, 64 Ga. 1. c. 228, a constitutional question was involved and was discussed by the court in that case; however, the constitutional question arose by reason of an exception as to farmers in the ordinance of the city of Atlanta reg-

ulating peddlers. Mr. Justice JACKSON very ably presented the views of that court upon the constitutional question before it, and in the course of the opinion the law as to the class of persons to whom the term peddler would be applied is very clearly and correctly stated, and it may be added that the rich humor indulged in the discussion of the proposition in no way detracts from the correctness of the views expressed by the learned judge. He said:

"It seems to us that this exception merely separates more clearly from the class of itinerant traders people who never really belonged to that class, and is not repugnant to that clause of our Constitution. Nor does it conflict with the rights of citizens of other States. Indeed, we see nothing in the exception, as it stands, to conflict with anybody's right. People who bring produce here from the country are not peddlers or itinerant traders, but farmers; and practically nobody will ever inquire whether the wagon came from DeKalb or from Greene, from Cobb county, Georgia, or from the State of Tennessee. Adjacent country are big words when used in an Atlanta ordinance. In the mind of our city fathers, the suburbs of Atlanta embrace many villages, and the country adjacent stretches indefinitely, and every farmer who wagons here what he makes at home from the soil need fear nothing from any discrimination against him in favor of those who live nearer to the city."

It is earnestly and very ably argued that the *tax* or *license* which is prohibited by the terms of section 6146, supra, is a license tax upon sales, and that the license here sought to be upheld is for the privilege of carrying on the business or occupation of hawker or peddler.

Section 6146, now being discussed, is very broad; the incorporated city shall have no power to levy or collect *any* tax, license or fees from *any farmer* (*not upon the sales made by him*), but for the sale of any

produce raised by him, etc., etc.   In other words, the prohibition, as applicable to this case, is that the city shall not demand or collect any license from any farmer for the sale of his produce.   It is apparent from the full text of this section, the sweeping terms employed, that the lawmakers intended that the class of persons embraced in that section should enjoy the full privilege, not only of selling, but the right to sell as well, the products of their farms, without the imposition of any tax of any nature whatever.   The privilege of selling, or the offering to sell, are incidents of the sale, and are included within the prohibitory terms  of  that section. We are unwilling to confine the force of section 6146 to the narrow limits contended for by respondent.

That the city of St. Louis, under the provisions of its charter, may license a business or occupation there is no dispute; but that is not this case.   The defendant is neither a peddler nor a hawker, and therefore does not fall within the class embraced in the ordinance; hence, he can not be held amenable for the misdemeanor denounced by section 2097 of the ordinance.

We have given due consideration to the authorities cited by respondent in support of the judgment in this cause; it is sufficient to say that they are not in conflict with the conclusions reached.

We have given expression to our views upon the questions  presented by the record in this cause, which results in the conclusion that the defendant does not fall within the class of persons embraced in the ordinance upon which this prosecution is based.

The judgment of the trial court is reversed and defendant discharged.

*Gantt, P. J.,* concurs; *Burgess, J.,* absent.