CITY OF HIGBEE, Appellant, v. CHARLES BURGIN, Respondent.

Kansas City Court of Appeals, December 3, 1917.

MUNICIPAL CORPORATIONS: Ordinances: Licenses. The appellant city instituted proceedings against defendant for selling meat within the city limits without a butcher's license contrary to the ordinances of said city. The defendant, a farmer, sold from his wagon spare ribs and sausages made from hogs raised and butchered by him. The sole question in the case was whether the things sold by defendant were "produce" within the meaning of section 9516, R. S. 1909, which provides that no city shall levy or collect any tax, license or fees from any farmer for the sale of any produce raised by him when sold from his wagon in such city. Held, that in the butchering of stock raised by a farmer on his farm, such as the hogs involved in this case, such a farmer is engaged in agricultural or farming pursuits and not those of slaughter or packing house; that the things sold were farm produce and defendant was not subject to the license ordinance of the city.

Appeal from Randolph Circuit Court.—Hon. A. H. Waller, Judge.

AFFIRMED.

Willard P. Cave for appellant.

F. E. Murrell for respondent.

BLAND, C.—Defendant was prosecuted by appellant city for selling meat without a butcher's license contrary to an ordinance of the latter. On a trial by the court a finding for defendant was had and the city has appealed.

Defendant was a farmer and sold from his wagon in appellant city, near which he lived, spareribs and sausage made from hogs raised and butchered by him.

The sole question in the case is whether the things sold by defendant were "produce" within the meaning of section 9516, Revised Statutes 1909. If they were, then defendant cannot be subjected to a license by the city. The section of the statute mentioned provides as follows:

"No incorporated city, town or village in this State shall have power to levy or collect any tax, license or fees from any farmer, or producer or producers, for the sale of produce raised by him, her or them, when sold from his, her or their wagon, car, or vehicle, or from any person or persons in the employ of such farmer or produce in any such city, town or village."

The word "produce" may have a variety of meanigns dependent upon the connection in which it is used. In reference to the produce of a farmer the court of appeals of the District of Columbia said:

"But the common parlance of the county, and the common practice of the country, has been to consider all those things as farming products or agricultural products which had the *situs* of their production upon the farm, and which were brought into condition for the uses of society by the labor of those engaged in agricultural pursuits, as contra-distinguished from manufacturing or other industrial pursuits."

This is the only definition of farm produce we have been able to find in the books. However, we think it a fair definition of the term and we therefore adopt it for the purposes of this case.

Under the definition given it seems to us beyond question that the pursuit undertaken by defendant was that vending "produce" within the meaning of our statute supra. The meat being sold by defendant was raised and brought into use for human consumption on the farm by the defendant who was engaged in agricultural pursuits and was, therefore, farm produce. [See Fitch v. The City of Madison, 24 Ind. 425.]

It has been suggested that the American people are a very versatile one and that by reason of this attribute the farmer has sometimes been his own manufacturer to a large extent, and in this connection it is said that the killing and dressing of beef or hogs by farmers is not an agricultural pursuit but one of slaughtering or slaughter house operation. [Mayor v. Davis, 6 W| & S. 279 (Penn.).] While the distinction between agricultural pursuits and those of an artisan or manufacturer is not an easy one in all cases, we cannot see why the killing and dressing by the farmer of fresh meat raised by him can be said to be any more the work of a manufacturer or an artisan than the killing and dressing of poultry. The raising, killing and dressing of the latter has become one of the greatest industries of agricultural America. If instead of selling the sausage and spareribs of the hogs defendant had sold the lard rendered from their fat, could it be said that the lard was not "farm produce?" Or would it do to say that when a farmer is making his butter and cheese he is engaged in the creamery business? We think not. Similar comparisons could be made ad infinitum. Whatever might have been said in the beginning as to the farmer being engaged in the pursuit of slaughtering, slaughter house operation or meat packing, when he butchered stock raised on his farm, such as the hogs involved in this case, the usages and practices of generations on American farms has in this day made such a practice one of agriculture or farming.

However, it is insisted that the Legislature has by another enactment manifested a policy as to the character of business in which defendant is engaged in section 10282, Revised Statutes, 1909. This section provides for the licensing of certain occupations therein named, but excludes from its operation persons dealing in agricultural and horticultural products including milk, butter, eggs and cheese. It is urged by appellant that hog killing and dressing do not come within those things excluded by this statute from its operation and that therefore this defendant is a peddler under the provision of

that statute and not a vender of farm produce under section 9516, supra. The supreme court has held that section 10282 relates to peddlers' licenses and that it has no application to a farmer selling his produce in a city. [St. Louis v. Meyer, 185 Mo. 583.]

We are unable to see how it can be said that fresh meats do not come within the definition of agricultural products as that term is used in section 10282 of the statute. The only suggestion made by appellant as to why this could not be the case is that appellant says that fresh meat is more easily contaminated and that it more easily spoils than ordinary agricultural products. We are not prepared to say as to the correctness of the statement in reference to the perishable qualities of fresh meat nor can we see what difference the proposition, if true, would make. The license ordinance we have under consideration has nothing to do with the right of the city to enact sanitary regulations.

From what we have said defendant was not subject to appellant's license ordinance and the judgment will be affirmed. All concur.