STATE OF MARYLAND *v.* RICHARD AMICK
[No. 77, October Term, 1936.]

*Decided January 22nd, 1937.*

538

The cause was argued before BOND, C. J., SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Hilary W. Gans, Deputy Attorney General,* and *Walter C. Capper,* with whom were *Herbert R. O'Conor, Attorney General,* and *William A. Huster, State's Attorney for Allegany County,* on the brief, for the State.

*Carlyle Barton* and *H. Warren Buckler, Jr.,* with whom was *William C. Walsh* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The appeal in this case is that of the State of Maryland from an order of the Circuit Court for Allegany County overruling the demurrer of the State to the special pleas of the appellee to the first, second, and third counts in an indictment found against the appellee, defendant below.

The first count in said indictment charges the defendant with having, on the 14th day of March, 1936, and on divers other days, in violation of the laws relating to licenses for the sale of goods, wares, and merchandise by traders, kept and used a certain place in said county, with the intention and for the purpose of selling with a view to profit in the prosecution of said sales, as a regular business, certain goods, wares, and merchandise, to wit, one loaf of bread, without taking out a license therefor, the defendant not being the grower, maker, or manufacturer thereof.

The second count, which is substantially in the words of the first count, charges that the defendant sold one loaf of bread, without taking out a license therefor, while not being then the grower, maker, or manufacturer thereof.

By the third count, the defendant is charged with the violation of the laws of this State relating to licenses for the sale of goods, wares, and merchandise by hawkers and peddlers, in that he kept and used a motor vehicle, with the intention and for the purpose of selling therefrom, from door to door, with a view of profit in the prosecution of such sales, as a regular business, and did sell, one loaf of bread, without first taking out a license therefor, as required by law, the defendant not being at said time the grower, maker, or manufacturer thereof.

In compliance with a petition, and order of the court thereon, for a bill of particulars, on behalf of the defendant, the state's attorney thereupon filed a statement of the particular facts which he expected to prove in support of the indictment. Briefly, these facts were: That a sale of one loaf of bread was made by the defendant from an automobile on March 14th, 1936, while on Gephart Drive, in Cumberland; that two days later a like sale was made to the same person, in the same way; that on the latter date similar sales were made to two other parties on Gephart Drive; and that on March 27th, 1936, he sold some buns from an automobile at the corner of Allegany and Greene Streets, in Cumberland—all of which sales were made without the defendant having first secured a trader's or hawker's and peddler's license.

Thereupon the defendant filed a plea of not guilty, and in addition thereto, four special pleas to the indictment. By the special pleas it is set forth: (a) As to the first count in the indictment, that at the time of the offense therein charged, he was the agent and employee of the Harris-Boyer Company, of Johnstown, Pennsylvania, which company was engaged in the business of manufacturing bread, cake, and other bakery products; that said employment was for the purpose of distributing the bakery products of said company to its regular customers residing in certain sections of the City of Cumberland, in Allegany County; that all the sales or other transactions referred to in the first count of said indict-

ment were made by him as agent of the company and under its authority; that said company was the owner of the bakery products referred to in the indictment, and was also the maker and manufacturer thereof; and that, acting as such agent, he was not required to take out a trader's license under the laws of this State. (b) As to the second count, the special plea directed thereto asserts that there is no law of the State requiring the defendant to obtain a license, other than the license referred to in the special plea to the first count, and the license referred to in the special pleas hereinafter mentioned to the third count. (c) To the third count two special pleas were filed. The first of these was designed to question the constitutionality of sections 26 to 31, inclusive, of article 56 of the Code, relating to the requirement of licenses for hawkers and peddlers. Inasmuch, however, as the subject-matter of this plea was not pressed in this court, it becomes unnecessary to consider the same. (d) The second special plea to the third count admits the sale therein alleged, as well also as the other specific sales set forth in the bill of particulars, but, in justification thereof, alleges that such sales were made to regular customers on standing orders previously given. It is further set forth that the defendant operated a motor vehicle owned by his employer, for the purpose of distributing goods, wares, and merchandise owned and manufactured by said employer; that he distributed bakery products of his employer along a regular route in the City of Cumberland prescribed by his employer, to regular customers upon standing orders previously given; that all of said sales and deliveries were made pursuant to standing orders previously given, with the exception of occasional isolated sales to persons who stopped him on his route and requested certain bakery products, which he alleged did not average one a day; that he did not carry additional supplies from which to make numerous sales to other than regular customers, the total of occasional sales representing less than one per cent. of the total sales made by him; that from time

to time new customers are secured along the same route, averaging from eight to ten a month, obtained through recommendations made by old customers, and upon being secured, these new customers are served upon receipt of standing orders received from them, similar to regular customers of the company; that he did not cry his wares, or undertake to attract attention by any device, and made daily and not intermittent trips to the City of Cumberland, always following the same regular route; that he was employed upon a regular salary basis, plus certain commissions; that under his contract with the employer, the company supplied all equipment, with the requisite quantity of bakery products needed for distribution, the title to the same at all times remaining in the company; that he was vested with authority to extend credit to certain customers in the name of the company, within certain limits, and that at no time did he act other than as the agent of the company for the distribution of its products; that the route in his charge was designated as "No. 46" by his employer; that persons living along the route were solicited by representatives of the company and supplied with samples of the company's products, whereby 188 persons living along the route executed and delivered to the company written sales orders, requesting and authorizing daily calls upon them for the purpose of supplying bakery products, 144 of these customers being those upon whom regular daily calls were made, and the remainder of them treated as regular customers, who purchased the company's products at more or less irregular intervals. Finally the plea definitely outlines the route over which the defendant made regular daily trips, as laid out for him by his employer, from which route, it is submitted, he did not deviate at any time.

The demurrer to these special pleas was overruled by the court on June 20th, 1936; and nothing further is shown by the record to have developed in the case until five days later, when the entry appears: "Judgment for

defendant upon demurrer—that he be dismissed and discharged from the premises."

Section 26 of article 56 of the Code, sub-title "Hawkers and Peddlers," provides: "No hawker or peddler shall buy for sale out of the State, or buy to trade, barter or sell, or offer to trade, barter or sell within the State any goods, wares or merchandise until he shall have first taken out a license for that purpose, but nothing in this section shall apply to hawkers and peddlers of oysters and fish in their unpreserved and natural condition, or of fruits and vegetables perishable in their nature that are sold in their natural condition in this State." Section 27 of the same article fixes the license rates for the various classes of hawkers and peddlers. Section 28 provides that no such license shall be granted in the name or style of a partnership or company, and that but one person shall trade under the same; and limits the authority of the license to the county in which it is issued. In section 42, subtitle "Traders," it is provided: "No person or corporation, other than the grower, maker or manufacturer shall barter or sell or otherwise dispose of, or shall offer for sale any goods, chattels, wares or merchandise, within this State, without first obtaining a license," in the manner therein prescribed. Section 43 (as amended by Laws 1929, ch. 36) declares: "When any person * * * shall propose to sell or barter, or dispose of, or offer for sale anything mentioned in the preceding section, * * * he shall apply to the clerk of the circuit court for the county in which he proposes to carry on such selling or bartering, or disposing of goods, wares, chattels or merchandise; * * * and a license to offer for sale issued by said clerk * * * shall be good and sufficient as a license to offer for sale in every part of the State; provided that such license shall not authorize the holder thereof to open or carry on any store or fixed place of business for such selling or offering for sale in any place other than in the place of business designated in said license.

It will therefore be observed that if the appellee, trad-

ing as hereinbefore outlined, is to be charged with any violation of the license laws of the State, the prosecution must be brought under one of the above subtitles.

As has been shown, the sections of law above quoted with reference to traders' licenses contemplate a fixed place of business located within the county in which the license is issued; and it cannot be logically contended that the occupation in which the appellee was engaged, and the manner in which he pursued it, would be covered by a license of the class known as "trader's." If, therefore, any license was required by the appellee, it would seem to follow that such license would be that of a "hawker or peddler." As a matter of fact, in the brief of the appellant it is stated: "The appellant relies mainly for reversal of the judgment of the court below on the making of these sales by the appellee without having secured a 'hawkers and peddlers' license. * * * If, in the case at bar, appellee had contented himself with taking orders and making deliveries, this case would not be here. He may and possibly did do a considerable business upon such orders; and as to that part of his business the State is making no complaint in this case. However, when the facts abundantly disclose, as they do in this case, that he departed from this method of business and habitually sold bread, buns, etc., from his motor truck to persons who had given no prior orders and who were not even customers or had never been solicited, then he became a peddler and is guilty of the offense charged in the third count of the indictment."

In other words, it is conceded by the State that no license is required by a maker or manufacturer to dispose of, or offer for sale, his manufactured product, and that such sales may be made by the manufacturer from some fixed place, either directly to customers who call at the establishment and make the purchase, or by delivery to customers, at their homes or elsewhere, of goods previously ordered. And in view of the definition of the word "manufacturer," as recently applied in the case of *Arnreich v. State*, 150 Md. 91, 132 A. 430, 436, and the

many cases therein cited, it can be concluded without question that the business of a baker is that of a manufacturer.

The appellant, by its demurrer, admits for the purposes thereof the well pleaded facts stated in the pleas, and is bound by the legal conclusions necessarily flowing from such a situation as those facts disclose. Hence, while the matter of agency, being a question of law, would not ordinarily be admitted by a demurrer, yet, as in this case, when the nature of the employment indicated is such that the employee is clearly the agent of the manufacturer, for the purposes of the demurrer the agency of the appellee must also be taken as conceded. The act of the agent being that of the principal, the agent could not be compelled to take out any license relating to the business that would not be required of his principal. Therefore, the question is whether the character of the sales complained of constitute such a departure from the general plan of the employer's business as to bring the employee within the definition of a hawker or peddler, and require the obtention by him individually of the appropriate license therefor. For the determination of that question it becomes necessary to consider the nature and characteristics of the occupation of a hawker and peddler, as contemplated by the Maryland statute.

The authorities are in accord to the effect that the business of a hawker and peddler, particularly in the early days, before modern facilities of rapid and easy communication were introduced, has always been looked upon with disfavor. This attitude towards them can be briefly summarized as growing out of their annoying methods of solicitation, transient nature, and financial irresponsibility. In 21 R. C. L. 182 it is said: "Not the least of the difficulties of the peddler situation is that in case of breach of warranty, breach of contract, fraud, cheating, or even theft by the peddler, he is generally out of sight or beyond the reach of process when sought. Furthermore, peddlers or hawkers who cry their wares

in the streets because of the noise may constitute a nuisance."

The original statute regulating the business of hawkers and peddlers was enacted in this State in 1856; and except for minor amendments designed to exempt certain counties, or to change the license fee prescribed, is the present law of this State on the subject. It is our opinion, however, that its provisions should be construed in the light of the many changes which have followed its enactment during the past eighty years; and in view of modern social conditions, and especially the improved methods in transportation and commerce, whereby substantial and permanent manufacturers can transport and deliver their product to the consumer in a manner which could hardly have been contemplated when the present law was enacted, it would be most unreasonable to classify such manufacturers or their agents as coming within the definition of the hawker or peddler of ancient times. *Heller Baking Co. v. Rochester Borough,* 118 Pa. Super. 501, 180 A. 108. If, as contemplated by the "traders" statute, the maker or manufacturer is exempt from the requirements of a trader's license, it must follow that he is authorized to dispose of his product, without a license, by some method; and if that method is pursued through the medium of first securing orders and subsequently making deliveries, there can be no legal criticism of the same. It is only when the manufacturer undertakes to peddle his product, through the method of sales and deliveries without prior orders, in any locality, and in competition with fixed local tradesmen, that his unlicensed business is deemed obnoxious and in violation of the hawkers and peddlers statute.

In the instant case it is shown that the primary and principal business of the defendant's employer was that of daily supplying regular customers over a fixed route; and nowhere is it shown that the defendant, while engaged in the delivery of the product, solicited transient trade. It is true that, during the pursuit of his business, sales were made by him at intervals to occasional cus-

tomers, who themselves initiated the transaction; but it is evident that such sales were only incidental to the business; and, as hereinbefore indicated, they took place along the route upon which he served his regular customers.

It is plain that no unbending rule regarding the enforcement of the hawkers and peddlers statute of this State can be laid down as being applicable to every case. In other words, each case must necessarily depend upon the peculiar facts incident thereto. At the same time, however, in applying the law to the facts in any similar case, we must take into consideration a changing economic and social order. With this thought in mind, it would be against public policy to restrict the expeditious delivery of the necessaries of life, such as bread, ice, and milk, by a strained construction of an ancient statute, which, in our opinion, is not applicable to such a case as the present. For example, the hawkers and peddlers section, above quoted, exempts from its provisions "hawkers and peddlers of oysters and fish in their unpreserved and natural condition, or of fruits and vegetables perishable in their nature that are sold in their natural condition in this State." It cannot be denied, and the court is justified in taking judicial notice of the fact, that, notwithstanding the exemption provisions of the law are confined to the several commodities set forth therein, the practice of selling milk and ice along established routes by the producer or manufacturer, without a license, has been in vogue in this state, without question, for many years, and as was said in *Arnreich v. State, supra;* "In view of the long, uninterrupted, and continuous construction put upon the statute by those charged with the collection of taxes thereunder, and the acquiescence of the Legislature in such construction, which acquiescence we are bound to presume, we feel constrained to follow the construction thus placed upon the statute."

Because of the far-reaching importance to the public in general which is involved in the questions intended

to be raised by this appeal, we have deemed it appropriate to discuss these questions at length, notwithstanding they are not now properly before us for final adjudication.

As has been shown, the appeal is that of the State from an order of the trial court, overruling the State's demurrer to the special pleas of the defendant to the several counts in the indictment. Obviously such ruling by the trial court was not final in its nature, and left the State free to traverse the several special pleas which the court by its action had sustained, as well also as the general issue plea of not guilty, which was filed in the case.

There being no final judgment entered in the case, it follows that the appeal on behalf of the State was prematurely taken, and must accordingly be dismissed. Code, article 5, sec. 86.

*Appeal dismissed, with costs to the appellee.*