## HOMER BROWN *v.* STATE OF MARYLAND

[No. 46, October Term, 1939.]

*Decided November 29th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, SHEHAN, and DELAPLAINE, JJ.

*G. C. A. Anderson,* with whom were *Keech, Carman, Tucker & Anderson* on the brief, for the appellant.

*Robert E. Clapp, Jr., Assistant Attorney General,* and *Douglas N. Sharretts, Assistant State's Attorney for Baltimore City,* with whom were *William C. Walsh, Attorney General,* and *J. Bernard Wells, State's Attorney,* on the brief, for the State.

BOND, C. J., delivered the opinion of the Court.

The appellant was indicted in Baltimore City as a hawker and peddler of ice cream without the state license required by the Code, art. 56, secs. 26, 27, 29 and 30, convicted and sentenced to pay a fine; and on appeal he presents for review actions of the trial court in overruling his demurrer to the indictment, and in excluding evidence of the previous customary inactivity of the police of the city with respect to such a trader.

The indictment contained six counts, but a verdict of "Not guilty confessed" entered on all but the second, third and fourth, has left those alone to be considered on review of the ruling on demurrer. *Wimpling v. State,* 171 Md. 362, 369, 189 A. 248. And they charged that Brown being a hawker and peddler, offered to trade, barter, and sell, did trade, barter, and sell, and was found offering to trade, barter and sell the ice cream without

the license required by the law. Section 26 of article 56 of the Code provides that, "No hawker or peddler shall buy for sale out of the State, or buy to trade, barter or sell, or offer to trade, barter or sell within the State any goods, wares or merchandise until he shall have first taken out a license for that purpose, but nothing in this section shall apply to hawkers and peddlers of oysters and fish in their unpreserved and natural condition, or of fruits and vegetables perishable in their nature that are sold in their natural condition in this State." Section 27 fixes the license fees, varying in amount according as the hawkers and peddlers affected are to travel on foot, with horse and wagon, or with a motor truck or motor vehicle of any description. The fee for those traveling in motor vehicles is $300. Section 29 provides for the apprehension of any hawker and peddler "who may be found trading, bartering or selling, or offering to trade, barter or sell" without license; and section 30 provides the fine when "said hawker or peddler has bought, traded, bartered or sold or offered to buy, trade barter or sell" without license.

It is first complained that these sections requiring licenses for hawkers and peddlers are so vague and indefinite in meaning under modern conditions that it is impossible to ascertain who are within their terms. But there is no extraordinary difficulty in determining who are hawkers, and peddlers. The definition is established with clearness, and in this and many other jurisdictions the courts have met with no unusual difficulty in distinguishing them and enforcing the law. See *Crout v. State,* 157 Md. 387, 388, 146 A. 241; *State v. Amick,* 171 Md. 536, 545, 189 A. 817; *Landham v. LaGrange,* 163 Ga. 570, 136 S. E. 514; *People v. Riksen,* 284 Mich. 284, 279 N. W. 513; *Hastings v. Bremerton,* 159 Wash. 621, 294 P. 551; *Neiman-Marcus Co. v. Houston,* (Tex. Civ. App. 1937), 109 S. W. 2nd 543.

Statements of the meaning have differed somewhat, naturally, but all agree that the words refer to those who go about seeking sales and deliveries of articles to pos-

sible customers. Moving or itinerant trading, sales negotiated along the way, with simultaneous deliveries, are essentials. The mode of travel is not important, especially in this case, as the appellant was moving about in a motor vehicle, which is a mode within the express terms of the law. Code, art. 56, sec. 27. *Commwealth v. Ober,* 12 Cush., (Mass.), 493; *Allport v. Murphy,* 153 Mich. 486, 116 N. W. 1070; *St. Louis v. Meyer,* 185 Mo. 583, 84 S. W. 914; *Emert v. Missouri,* 156 U. S. 296, 15 S. Ct. 367, 39 L. Ed. 430; Note: "Who is a peddler or hawker within statutory or municipal regulations," *L. R. A. 1916 B,* 1293; and on the same, *Ann. Cas. 1912 D,* 1290, 1291. The appellant carried the ice cream along for possible customers in a truck with compicuous marking on the sides, announced his coming by ringing bells, and made sales and deliveries were he could; and he answers to all the tests of a hawker and peddler. There is testimony that some customers bought from him regularly as he came along, some were only occasional buyers, but those facts do not affect his position as a hawker and peddler. And again, the facts that the goods belonged to his employer, and that he was selling on commission, do not remove him from the class. *Wrought Iron Range Co. v. Johnson,* 84 Ga. 754, 755, 11 S. E. 233; *In re Wilson,* 8 Mackey 341, 19 Dist. Col. 341, 348; *Commonwealth v. Gardner,* 133 Pa. 284, 19 A. 550.

It is objected that there is uncertainty and confusion in the law which renders it unenforceable, in that no section requires a license for the trading, bartering and selling, or offering to do so, made punishable under sections 29 and 30. Those sections in themselves make it unlawful to trade, barter or sell, or to offer to trade, barter and sell without a license, but it is contended that the license is not identified because section 26 requires a license only for buying, and sections 29 and 30 cannot be construed to refer to that license. But the court is of opinion that the later sections do require the license previously described for the acts named in them, and there is no omission in the law as contended. Further, section 26 has

been considered by the court to require the license for offering to trade, barter, and sell. The appellant's construction is as if the section read: No hawker or peddler shall buy to trade, barter or sell, or to offer to trade, barter, or sell within the State, thus merely forbidding the buying for the purposes specified, except under license. And the words are susceptible of that construction. In *Banks v. McCosker*, 82 Md. 518, 34 A. 539, however, on a question whether sale by a hawker and peddler without a license under the section rendered illegal a promissory note given in payment, it appears to have been assumed that offering to trade, barter or sell, or doing so, without reference to buying, was forbidden except under license. And the cases of *Crout v. State*, 157 Md. 387, 388, 146 A. 241, and *State v. Amick*, 171 Md. 536, 545, 189 A. 817, are authorities for the view that the sections taken together require a license irrespective of the buying. The court concludes that the objection considered cannot save the appellant from the requirement.

It is contended, further, that section 26 requires that which is not constitutionally possible in its imposition of the license requirement on buying for trading, bartering or selling outside the state. This state, it is objected, cannot tax or regulate buying here according to the nature of disposal of the goods outside the state. But a defect in that respect would not prevent enforcement of the law against the appellant, who does not himself buy, and who sells within the state. He would have no grievance from that requirement and could not object because of it. In *State v. Case*, 132 Md. 269, 272, 103 A. 569, 570, objection to a license requirement was made by a resident on the ground that the license tax law discriminated against non-residents and was therefore unconstitutional and unenforceable, but the court said, "being a resident and a party not discriminated against, he cannot take advantage in this court of that point, for his rights are not affected." See cases there cited, and *Clark v. Kansas City*, 176 U. S. 114, 118, 20 S. Ct. 284,

44 L. Ed. 392; *Winter v. Barrett,* 352 Ill. 441, 186 N. E. 113.

Further objections are made on constitutional grounds. It is objected that this license law is a police regulation in the guise of a revenue measure, that the license fees are so large as to be destructive of the business, and that the exemption of hawkers and peddlers of fish, oysters and perishable fruits and vegetables improperly discriminates against those left subject to the law.

It was held in *Banks v. McCosker, supra,* that the statute was a revenue measure, and not an exercise of the power to protect the public, and therefore the selling was not so prohibited as to render the contract of sale illegal. But the appellant thinks that it survives under more modern conditions only as a police regulation. The court does not, however, find foundation for that change in construction. The requirement seems indistinguishable from any other trade or occupational tax; and this is so even if it may be assumed that it is intended to equalize the public burdens as between hawkers and peddlers and traders in fixed situations, or has other collateral purposes. Speaking of a tax on junk dealers, the court in *State v. Shapiro,* 131 Md. 168, 173, 101 A. 703, 705, said: "The license provision under inquiry is plainly a revenue measure. It is enacted and codified under the head of 'Traders' Licenses.' It does not purport to have any relation to the police power, although in determining the amount of the fees to be paid by junk dealers the Legislature may properly have taken into consideration the fact that the business is an appropriate object of police supervision, especially in a large city, because of the opportunities if often affords for the disposition of stolen property." "Collateral purposes or motives of a Legislature in levying a tax of a kind within the reach of its lawful power are matters beyond the scope of judicial inquiry." *Magnano Co. v. Hamilton,* 292 U. S. 40, 44, 54 S. Ct. 599, 601, 78 L. Ed. 1109; *Stamford v. Fisher,* 140 N. Y. 187, 191, 35 N. E. 500. And see *Sonzinsky v. United States,* 300 U. S. 506,

513, 57 S. Ct. 554, 81 L. Ed. 772; *Leonard v. Earle,* 155 Md. 252, 259, 141 A. 714; *State v. Shapiro,* 131 Md. 168, 173, 101 A. 703.

As for the objection that the tax will stop the business, this court, in company with the majority of courts elsewhere, has taken the view that a revenue measure, or a tax, adopted directly by the Legislature, is not open to constitutional objection in the courts because it may destroy an activity taxed—excluding now as not involved any such thing as a tax in form which constitutes in substances and effect the exertion of a different and forbidden power. *Magnano Co. v. Hamilton,* 292 U. S. 40, 44, 54 S. Ct. 599, 78 L. Ed. 1109. It is an Act of Assembly that is being considered, not a municipal ordinance under delegated and limited power. "The courts, therefore, cannot upon the evidence oppose their judgment to that of the Legislature on imposing any tax, or on the fairness of the amount imposed. It is only when a license fee is exacted as a police regulation that the court can consider whether it is so unreasonable as to amount to a prohibition." *Jones v. Gordy,* 169 Md. 173, 180, 180 A. 272, 275; *State v. Applegarth,* 81 Md. 293, 300, 31 A. 961; *Meushaw v. State,* 109 Md. 84, 91, 71 A. 457; *State v. Shapiro,* 131 Md. 168, 173, 101 A. 703. "The amount of a license or occupation tax, where it is a tax as distinguished from a fee imposed in the exercise of the police power, is within the discretion of the legislature, and cannot be reviewed by the courts." 1 *Cooley, Taxation* (4th Ed.), sec. 72; *Sonzinsky v. United States,* 300 U. S. 506, 513, 57 S. Ct. 554, 81 L. Ed. 772. The appellant's objection is, more exactly, only that an old license tax does not permit carrying on a recently devised method of selling ice cream. The business is not destroyed; by the contention made there is no opening for it if this tax is to be paid. The objection is that prices adopted for street sales could not be maintained if this tax is imposed, and this not a valid ground of complaint. Nothing in the Constitution requires that taxes be adapted to the maintenance of a low price. *Winter v. Barrett,* 352 Ill. 441,

186 N. E. 113. Fairness to taxpaying dealers from fixed places of business might have been thought to require equalization by such a tax.

The fact that the exemption in the statutes, of hawkers and peddlers of the perishable foods named, has been long on the books without question, argues for accepting it as one of recognized and established reasonableness. And, besides, the court could not on anything now before it find unconstitutional discrimination against those not exempted. The Legislature has power to grant exemptions from taxation, according to its views of public policy. *Buchanan v. Talbot County Commrs.*, 47 Md. 286, 293; *Simpson v. Hopkins*, 82 Md. 478, 488, 33 A. 714; *Baltimore v. German-American Fire Ins. Co.*, 132 Md. 380, 386, 103 A. 980; *Jones v. Gordy*, 169 Md. 173, 185, 180 A. 272. "Of course, if such discrimination were purely arbitrary, oppressive, or capricious, and made to depend upon differences of color, race, nativity, religious opinions, political affiliations, or other considerations having no possible connection with the duties of citizens as taxpayers, such exemption would be pure favoritism, and a denial of the equal protection of the laws to the less favored classes." *American Sugar Refining Co. v. Louisiana*, 179 U. S. 89, 21 S. Ct. 43, 44, 45 L. Ed. 102; *Magnano Co. v. Hamilton*, 292 U. S. 40, 54 S. Ct. 599, 78 L. Ed. 1109; *Carmichael v. Southern Coal & Coke Co.*, 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245. "The reader of any considerable number of these cases [on discrimination] cannot but be impressed with the fact that the courts invariably, if they sense any possibility of so doing, sustain the legislative action in regard to classification. They recognize that taxation presents a practical problem; that exact equality is utterly impossible, and that the legislative discretion should be sustained." *State, ex rel. Botkin v. Welsh*, 61 S. D. 593, 251 N. W. 189, 213.

An objector on this ground has the burden of demonstrating the existence of the unconstitutionality. "Every presumption is to be made in support of the theory that

the General Assembly has validly and properly exercised its powers." *State v. Shapiro,* 131 Md. 168, 173, 101 A. 703, 705; *Carmichael v. Southern Coal & Coke Co.,* 301 U. S. 495, 513, 57 S. Ct. 868, 81 L. Ed. 1245; *Landham v. LaGrange,* 163 Ga. 570, 573, 136 S. E. 514.

The exemption of farm products, meat, and other perishable foods, is a common provision of statutes and ordinances on this subject, and in the great majority of decisions it has been upheld against attack on the ground of unconstitutional discrimination. In *re Snyder,* 10 Idaho 682, 79 P. 819; *Curtis v. Pfost,* 53 Idaho 1, 21 P. 2nd 73; *St. Louis v. Meyer,* 185 Mo. 583, 84 S. W. 914; *McKnight v. Hodge,* 55 Wash. 289, 294, 104 P. 504; *Hastings v. Bremerton,* 159 Wash. 621, 294 P. 551; *State ex rel. Northern Transp. Co. v. Railroad Commission,* 196 Wis. 410, 220 N. W. 390; *Southern Transfer Co. v. Harrison,* 171 Ga. 358, 155 S. E. 338; *State, ex rel. Botkin v. Welsh,* 61 S. D. 593, 251 N. W. 189; *Carmichael v. Southern Coal & Coke Co., supra.* Contra, see *Winter v. Barrett,* 352 Ill. 441, 186 N. E. 113. Retail sales of fresh foods, including oysters, along the streets and roads have for a long time in Maryland provided a common market for the state's food products, and it is not difficult to suppose that in imposing the license tax on hawkers and peddlers the Legislature may have found it in the public interest to exclude them from it. And just what is a proper exemption may, under tax laws, as with laws concerning activities on Sunday, depend to an extent upon general public conceptions which, while well known to a Legislature, cannot be clearly established upon a basis of reason. *Ness v. Supervisors of Elections of Baltimore,* 162 Md. 529, 538, 160 A. 8. We find many distinctions and exemptions in the imposition of license taxes. See, for example, the sections on traders' licenses. Code, art. 56, sec. 42 to 72. And a practice of distinguishing and exempting vendors of perishable foods on the roads and streets has had an analogy in that of exempting vendors from market stalls. *Arnreich v. State,* 150 Md. 91, 96, 132 A. 430. The mere existence of exemptions does not

therefore establish unconstitutional discrimination. There must be more. And no more is made to appear to the court. The objection has not, therefore, been sustained.

An objection that a trader's license under the appropriate sections of the state law had been given to the appellant's employer presents still another problem. Re-examination of these sections (sections 42 to 72 of article 56) shows, however, that the trader's license is intended for just what the appellant was not, a dealer from a place of business. An applicant for a license in that form is required to state on oath the location of his place of business, which must be in the county or city where the license is procured. Section 43 and 44. The licensee is one who has a stock in trade, and the fee is graduated in amount according to the amount of that stock in trade. Section 45 to 65. If the appellant's employer has a place of business or headquarters for his trade, it may be necessary for him to take out a trader's license for it, but whether it is or is not, when he sends out hawkers and peddlers of the ice cream, he must, under the law as we see it, have hawkers' and peddlers' licenses for them.

The court finds the offered evidence of previous failure of the police of Baltimore to enforce this law against the ice cream vendors properly excluded. The law is one for the whole state, and for a method of trading which exists throughout the state, and the practice of the Baltimore police would not be sufficient to fix its applicability. The practice may have been due to a local misconception, although the advice of Attorney Generals of the State since 1921, which the record shows to have been given to the police as well as to license clerks and others, leaves little room for that explanation. See *Arnreich v. State,* 150 Md. 91, 106, 132 A. 430.

No error is found in the rulings reviewed.

*Judgment affirmed, with costs*

OFFUTT, J., concurs in the conclusion.