CASE, INDIVIDUALLY, AND TRADING AS W. B. CASE BOX LUNCH COMPANY *v.* COMPTROLLER OF THE STATE OF MARYLAND

[No. 155, September Term, 1958.]

*Decided March 16, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and KEATING, Associate Judge of the Second Judicial Circuit, specially assigned.

*A. Adgate Duer* and *Robert C. Prem,* with whom were *Niles, Barton, Yost & Dankmeyer* on the brief, for appellants.

*Joseph S. Kaufman, Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellant filed a bill of complaint in the Circuit Court of Baltimore City for a declaratory judgment to have the court determine that its driver-salesmen are not hawkers and peddlers within the meaning of Code (1957), Article 56, Section 21. The appellee filed a combined demurrer and answer to the bill of complaint. Testimony was heard by the chancellor, who delivered an oral opinion at the conclusion thereof, holding that the appellant's driver-salesmen were hawkers and peddlers within the meaning of the statute. From a decree dismissing the bill of complaint, the appellant has filed the

present appeal. The appellee waived any consideration of its demurrer.

Appellant, trading as the W. B. Case Box Lunch Company, is engaged in the preparation and sale of box lunches and other items, such as individual sandwiches, pie, cake, milk, orange drink, canned soup, and hot coffee in plants and factories in the Baltimore area. The food is prepared at the appellant's place of operation in Baltimore City, then it is placed on trucks and sent to various industrial plants for sale. At the present time, the appellant has nine trucks serving eight routes, one truck being held in reserve for emergencies. Each route is served daily by the same driver-salesman; and each route calls for stops at specified factories to be made in regular rotation daily at designated times. No stops are made between the designated points.

When the driver-salesman arrives at his designated points-of-call, the appellant's method of operation varies from factory to factory. Approximately 90% of its business in the Baltimore area is done inside the plants and factories. In some plants, where cafeteria service used to be provided and has been discontinued or where a lunchroom is provided but without cafeteria facilities, fold-away type tables are used to display the appellant's merchandise, and the employees of the plant come forward and select what they wish to purchase. This is a cafeteria-type arrangement. In other plants the driver-salesman will, through the use of mobile units, dollies and baskets, take his box lunches and sandwiches right into the plant and serve the employees at their workbenches or desks.

The other 10% of the appellant's business is conducted outside of plants and factories. At certain designated stops, the driver-salesman will park his truck, in some cases on the property of a factory and in other instances on the public street, and serve the employees as they come to the truck.

The trucks used by the appellant have the Case Box Lunch Company name on the side, but there are no noise-making devices thereon to attract attention nor is any such device or signal used.

Before servicing a new plant, the appellant first seeks the

permission of the plant management. If permission be granted, the appellant's products are demonstrated to the employees of the plant or circulars are distributed and orders are taken from the employees for the first day's operation, before one of the appellant's trucks makes a stop. Some plants are served on what is termed on-the-public-street basis, when the plant management refuses permission to have it done in any other manner.

After the first day of servicing a new plant, the driver-salesman makes up his own individual order of merchandise for his route from a menu distributed to him the day before the items will be delivered. The menu follows a rather regular pattern for the same day of different weeks even though it differs considerably from day to day. From past experience in selling to regular customers from day to day, the driver-salesmen claim they can reasonably anticipate what they will sell even though there are no standing orders, or previously written orders, as such. There is a considerable difference between the type of orders submitted by salesmen on different routes. The plant enters into no contractual arrangement for the supplying of these lunches, and neither the appellant nor the plant can compel the continuance of the operation.

The only question involved is whether, under the provisions of Code (1957), Article 56, Section 21, which provides that "No hawker or peddler shall * * * buy to trade, barter or sell, or offer to trade, barter or sell within the State any goods, wares or merchandise until he shall have first taken out a license * * *," the appellant is required to take out such licenses for its driver-salesmen.

This Court has stated that no precise and inflexible rule regarding the enforcement of the hawkers and peddlers statute can, or should, be laid down as applicable to every case; but that each case should be determined on the peculiar facts incident thereto. *State v. Amick,* 171 Md. 536, 546, 189 A. 817. See also 32 *Ops. Att'y Gen.* 215.

In *Brown v. State,* 177 Md. 321, 325, 326, 9 A. 2d 209, the meaning of hawkers and peddlers was defined. It was there said that all authorities agree that the words refer to those who go about seeking sales and deliveries of articles to

possible customers. While the mode of travel is not important, it is essential that a peddler go from house to house or from place to place carrying articles of merchandise with him which he concurrently sells and delivers. And the fact that some customers are previous occasional or regular buyers does not alter the position of a seller as a hawker or peddler. And this seems to be the generally accepted law elsewhere. Rhyne, Burton and Murphy, *Municipal Regulations of Peddlers, Solicitors and Itinerant Merchants* (National Institute of Municipal Law Officers, Report No. 118, 1947) pp. 6-14. In the *Amick* case, *supra,* it was held that a bread-truck driver, whose employer's primary and principal business was that of daily supplying regular customers over a fixed route, who did not solicit transient trade, but, at intervals, made occasional sales to customers who initiated the transactions, did not require a hawkers and peddlers license.

We think it is clear in the case at bar that the appellant's drivers come within the scope of being hawkers and peddlers. It is true they operate upon regular routes and schedules, but this, alone, is not controlling. Neither is the fact that many of their purchasers were regular customers; nor that the drivers estimated, in advance, their daily sales. With the exception of the first day that they service a plant, they move out from their employer's place of business with their merchandise and go from location to location to seek prospective customers to whom they make and negotiate sales of their products with immediate and simultaneous deliveries. This is the controlling factor in the situation, and it constitutes their primary and principal business, not an incidental or casual part of an operation such as the sales involved in the *Amick* case. We, therefore,. hold that the appellant's drivers are required to obtain hawkers and peddlers licenses.

While there have been many opinions rendered by the attorneys general upon the subject of this class of licenses, there are two in which the factual situations were quite similar to those in the instant case. The first involved "Grillemobiles," which were automobiles, stocked and equipped for the purpose of making sales of foods and lunches, that were taken to certain stations or locations, at or near plants and

factories in Baltimore City, during the lunch and dinner hours for the purpose of selling the food. The owners also anticipated taking them to public gatherings such as football games, etc. The sales were confined to "locations" of the automobiles which were upon private property, except when a license was procured for the use of public property. The attorney general ruled that hawkers and peddlers licenses were required. 24 *Ops. Att'y Gen.* 514. In the second, the question was posed as to whether the operator of a "mobile driver," which, in the course of a day, served meals at a number of locations at specified times, and which made no sales while moving from one location to another, required a hawkers and peddlers license. The attorney general ruled that the operator required the license.

In this case, the bill of complaint requested declaratory relief. The chancellor determined the issue involved against the plaintiff and dismissed the bill without declaring the rights of the parties. Ordinarily, whether a declaratory judgment action is decided for or against the plaintiff, there should be a declaration in the judgment or decree defining the rights of the parties under the issues made. *Strype v. Lewis,* 180 S. W. 2d 688, 690 (Mo. 1944); *Frazier v. City of Chattanooga,* 1 S. W. 2d 786 (Tenn. 1928); *Kingston v. St. Louis Union Trust Co.,* 154 S. W. 2d 39, 43 (Mo. 1941); *Morgan v. Banas,* 122 N. E. 2d 369, 371 (Mass. 1954); 2 Anderson, *Declaratory Judgments,* 1076. However, the order in this case, in effect, declared that the appellant's drivers will be compelled to obtain the licenses; so, it will not be disturbed. *Mohr v. Universal C. I. T. Corp.,* 216 Md. 197, 211, 140 A. 2d 49; *Armiger v. Lewin,* 216 Md. 470, 478, 141 A. 2d 151.

*Order affirmed, with costs.*