PLANTABBS CORPORATION *v.* COMPTROLLER
OF TREASURY ET AL.

[No. 201, September Term, 1960.]

66

*Decided April 6, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*George M. Radcliffe* for the appellant.

*James O'C. Gentry, Assistant Attorney General,* with whom
were *C. Ferdinand Sybert, Attorney General,* and *Stedman
Prescott, Jr., Deputy Attorney General,* on the brief, for the
appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a declaratory decree that the appellant
was required to obtain a trader's license. The facts are not
disputed and were summarized in the chancellor's opinion. No
procedural questions are presented.

Plantabbs Corporation for thirty-five years has marketed
plant food and plant fertilizers in liquid and tablet form un-
der a trade name. These products are sold throughout the
United States and in foreign countries. It sells primarily to

wholesale distributors, chain stores and other retailers, and only incidentally to unsolicited, direct consumers. Out of gross sales of over $1,000,000 throughout the United States, including Maryland, sales to consumers amounted only to about $400, during the years 1955-1958. During that period about $33,000 represented gross sales to wholesalers and retailers in Maryland. The corporation does not have any sales facilities in Maryland for the direct sales of its products to consumers, nor does it employ or use salesmen or sales personnel for promotion of direct sales to consumers. The salesmen it employs for the solicitation of orders from wholesalers or retailers (apparently in regional territories) work on a commission basis.

The corporation has its principal office in Baltimore City. Although it has no plant of its own, it purchases and pays for raw materials used in the making of its products, including mono-ammonium phosphate, potassium nitrate, and sulphuric acid. These materials are delivered to various firms and corporations who, by contract, make them into the finished products in accordance with secret formulas and processes developed by and owned solely by the appellant. All of the boxes, bags, labels, bottles, caps, etc., are purchased and paid for by the corporation and delivered pursuant to its instructions to the contracting firms and corporations. The finished products are produced in accordance with instructions given from time to time by the appellant, sometimes on a daily basis, as to the amounts of each style and size required to fill the orders obtained from wholesalers and retailers. The appellant purchases only such raw materials as are needed to make the finished products and does not otherwise engage in the business of buying or selling raw materials or in the business of buying or selling fully processed and packaged plant foods or plant fertilizers. For the first time since it began its operations some thirty-five years ago, the State Comptroller now insists that it should obtain a trader's license.

Code (1957), Art. 56, sec. 32 (as amended by chapter 348, Acts of 1959, simply to eliminate certain exemptions),

provides: "No person or corporation, other than the grower, maker or manufacturer shall barter or sell or otherwise dispose of, or shall offer for sale any goods, chattels, wares or merchandise, within this State, without first obtaining a license in the manner herein prescribed." Section 33 provides that the application for the license shall be made to the clerk of court in the county or Baltimore City where the applicant proposes to carry on the selling and provides that although a license issued in one locality may permit sales in any part of the State, such license "shall not authorize the holder thereof to open or carry on any store or fixed place of business for such selling * * * in any place other than in the place of business designated in said license and in the application therefor, it being intended hereby that a separate trader's license shall be obtained for each store or fixed place of business; * * *." Section 35 and the sections following fix the license fee in accordance with "the applicant's stock in trade". Section 57 provides that additional fees be paid in cases where two or more stores or mercantile establishments are operated.

The cases make it clear that the quoted sections must be read together and that the license is required only in the case of persons selling from a store or fixed place of business. *Salfner v. State,* 84 Md. 299; *Brown v. State,* 177 Md. 321. The fee for a single place of business is measured by the stock in trade. We think it is clear from the undisputed facts in the case that the appellant does not have a place of business from which it sells goods to consumers. Although it has its principal office in Baltimore City, that office cannot be considered as a store, either wholesale or retail, because it employs no salesman to make sales to consumers at that location, nor does it carry any stock of goods there. Its sales operation is that of a distributor of its products, which are made up by other firms and corporations at other locations, to wholesalers and retailers. If it could be said that it carries a stock of goods at the locations where the finished products are produced, on the theory that such other firms and corporations are its agents rather than independent contractors, then it would seem to follow that they are also its agents for

the purpose of producing such finished products within the exception of Code (1957), Art. 56, sec. 34, in favor of a manufacturer. Cf. *State v. State Board of Assessors*, 24 Atl. 507 (N. J.), *aff'd*, 32 Atl. 2.

It has been held that one who purchases timber and sells lumber is not a trader within the meaning of a statute like ours. *State v. Chadbourn*, 80 N. C. 437. The term "maker" is broader than "manufacturer", and includes one who causes something to come into existence that is new and different from the raw materials of which it is composed. *In re I. Rheinstrom & Sons Co.*, 207 Fed. 119, 151 (E. D. Ky.), *aff'd*, 221 Fed. 829 (6th Cir.), *cert. denied*, 238 U. S. 634, *appeal dismissed*, 239 U. S. 11. Much the same definition was adopted by this Court in *Arnreich v. State*, 150 Md. 91, 100, where the Court said: " 'Manufacture' is: The application to material of labor or skill whereby the original article is changed to a new, different and useful article, provided the process is of a kind popularly regarded as manufacture." It was there held that a butcher was not a manufacturer. But in *State v. Amick*, 171 Md. 536, 543, a baker was held to be one, and the court remarked that the State conceded "that no [trader's] license is required by a maker or manufacturer to dispose of, or offer for sale, his manufactured product, and that such sales may be made by the manufacturer from some fixed place, either directly to customers who call at the establishment and make the purchase, or by delivery to customers, at their homes or elsewhere, of goods previously ordered." Whether a manufacturer may still sell direct to consumers, in view of Code (1957), Art. 56, sec. 34, is a question we do not reach. The sales to consumers in the instant case are *de minimis*, and the appellee does not rely on them.

The appellee relies strongly upon *H. M. Rowe Co. v. State Tax Commission*, 149 Md. 251, where it was held that one who prepared texts that were printed by independent contractors was not a manufacturer. That case, however, involved an exemption from property taxation of mechanical tools used in manufacturing and is readily distinguishable. In another manufacturer's exemption case involving a shirtmaker, *Mayor*

& C. C. of Baltimore v. Hanover Shirt Co., 168 Md. 174, 182, the Court said: "If, as we have seen, a manufacturer does not lose his tax exemption if he fails to perform one of the earlier processes essential in the course of manufacture, why should he be less entitled to the exemption if one of the intermediate processes is performed by another manufacturer, or by him in another jurisdiction?" Moreover, the court said in the Rowe case, supra at p. 258: " 'Manufacture' * * * is a plain word in every day use, and as ordinarily understood means the process of converting some material into a different form adapted to uses to which in its original form it could not be so readily applied * * *." It can hardly be denied that in the instant case the process by which chemicals and other raw materials are converted by secret processes into finished products possessing a special utility as a stimulant to plant growth is manufacturing within the definitions cited.

The whole business of the appellant and the profit it derives are measured by the increase in value brought about by the conversion process. It makes no profit as a dealer. "A manufacturer does not become a merchant by disposing of the goods he has produced at a manufacturer's profit." 55 C.J.S., "Manufactures", § 1 b (2) note 32. The mere fact that the appellant effects the conversion of its raw materials into finished products by contract rather than the direct employment of labor does not make it a trader. As we read the Maryland Statutes it is only a trader who is required to have a trader's license.

We find it unnecessary to pass upon the other points argued or to discuss the effect of administrative practice.

*Decree reversed, with costs, and case remanded for the passage of a decree declaring that a trader's license is not required of the appellant.*