## HUNT, ET AL. *v.* MONTGOMERY COUNTY, MARYLAND, ET AL.

[No. 18, September Term, 1967.]

*Decided January 8, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, MARBURY, McWILLIAMS and SINGLEY, JJ.

*William M. Canby, C. Edward Nicholson* and *Stanley J.
Nadonley,* with whom were *George W. Young, Jr., Barnard T.*

*Welsh, George B. Ballman, Carl Lee Frederick, Jr.,* and *William L. Kahler* on the brief, for appellants.

*David L. Cahoon, County Attorney,* with whom was *Carter C. Hubbel, Jr., Assistant County Attorney,* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

This is a querulous appeal by some fourteen property owners of Montgomery County whose properties were rezoned to commercial classifications or classifications of greater density after the election of a completely new County Council by the old or "lame duck" Council. The newly elected Council chose to reconsider these rezonings and before it had finally acted on them, the owners filed two equity suits seeking to enjoin any change in the zonings granted by the old Council and a petition on the law side against the County and the members of the Council for a declaratory judgment that the rezonings were "final and no longer subject to reconsideration or appeal."

The primary claim of the owners in seeking to enjoin rezoning by the new Council was that it lacked the power to do so unless it acted finally within thirty days of the original decision. The allegations were that the old Council had rezoned their properties between November 9 and November 11, 1966; that Section 111-50 of the Montgomery County Code (1965 Ed.) provides that the decision of the Council on any application for a map or text amendment shall be final except that the district council on its own motion may, within thirty days thereafter, "reconsider its decision on any application"; that the new Council did on November 19, 1966, ten days after the earliest rezoning, formally resolve that "the District Council on its own motion hereby reconsiders its decisions on the following applications for map and text amendments," including those here involved; that the resolutions contain no mention of fraud, mistake or new evidence; and that as of the time of the filing of the petition for declaratory relief, the resolutions remained executory in that the Council has not acted to affirm, reverse or modify the prior decisions it resolved to reconsider, within thirty

days of the decision, although the Council has set up a schedule of rehearings.

A secondary contention was that the members of the new Council did not, prior to resolving to reconsider the decisions of the old Council make an affidavit that they had read the entire record before acting, as allegedly required by Sec. 70-89 c of the Montgomery County Code (1965 Ed.).

Judge Clapp was imported from Frederick County to hear and decide this matter that was so momentous and meaningful in Montgomery County. Judge Clapp heard arguments on January 23, 1967, in the two equity cases and then conferred with all counsel. The results of that conference were summarized by Judge Clapp in the recitation of his declaratory judgment on why the court would declare, as it thereafter did, (a) that the resolution of the new Council to reconsider was a present, timely and valid action; (b) that there is no provision of law that requires the Council to take final action either affirming, reversing or modifying a zoning application within thirty days of an original decision; and (c) that the execution of an affidavit by a Council member that he has read the record in a rezoning application is not a prerequisite to voting to reconsider the prior decision. He said:

> "After conference with the attorneys for all parties hereto involved in the above-captioned suits at Law and Equity, it appeared and the parties agreed, that the matters involved in these suits should be decided as promptly as possible, at trial court level. It appearing further that at least some of the issues involved in Law No. 20665 should be resolved in order to properly rule in Equity No. 32698 and Equity No. 32723, this Court determined to reserve ruling in said Equity suits until the issues raised in Law No. 20665 could come on for hearing. Because Plaintiffs did not feel they were in a position to proceed immediately to the merits, and the taking of testimony with regard thereto, it was agreed and acquiesced to by the parties hereto that the Defendants would file a Demurrer, rather than an Answer, and that as many issues as could be

determined as a matter of law be argued and decided on said Demurrer; and, depending on the outcome of said Demurrer, that the time and convenience of the Court and the parties would be served by alleviating the necessity of taking any evidence relating to any disputed facts, such as the alleged reasons of the 'new' members in acting to reconsider, until such time as such issue was necessarily reached."

The record supports the court's statement that it was by agreement and mutual consent that the demurrer to the petition for declaratory judgment was intended to present to the court whether as a matter of law the petitioners were entitled to the declaration they sought or must receive a declaration that the County's views on the issue were correct, and not whether the allegations of the petition presented a justiciable controversy. Indeed, although the petitioners in the course of argument on the question proffered to show the legislative history of the thirty-day provision (which seems to have been at least as favorable to the defendants' reading of the ordinance as to the petitioners'), it was not until after the declaration was ordered without a ruling on the demurrer that the petitioners on February 2, 1967, asked Judge Clapp in a conference of counsel at Frederick to rule on the demurrer and require the defendants to file an answer and then have a trial at which testimony on legislative history and administrative practice could be offered.

Judge Clapp refused to reconsider his decision and order, recalling that the parties had agreed there was no dispute as to the facts alleged in the petition for declaratory relief, but only a dispute as to the legal effects and result of those facts and that he had suggested and the parties had agreed that the legal effect and result could be tested and determined by a demurrer, since there was never any question as to whether the petition alleged a justiciable controversy. He opined that to him there was not the ambiguity in the statutes that would require or justify the taking of testimony, saying that petitioners had indicated they wished "to prove the facts and circumstances of the adoption of these ordinances," and added:

"They might be interesting. But the ordinances must first be construed on their face and, to me, they seem to be perfectly clear. * * * So I don't feel that any testimony was required to assist in this interpretation. * * * I can only say I feel that I have, to date, complied with the decisions of the Court of Appeals on declaratory judgments. I notice in *Myers v. Chief of Baltimore County Fire Bureau,* 237 Md. 583, the statement, 'that demurrers rarely should be sustained or bills dismissed without declaring rights of parties.' And that was the reason that I have suggested in making up the formal decree the statement should be made that had this been an ordinary suit in law or equity, the demurrer should have been sustained because I felt the Bill was legally insufficient and in view of my interpretation of the action of the Council in these ordinances, but that it should further state in view of the fact that this is a petition for declaratory judgment, that the rights of the parties should have been declared in accordance with my opinion as outlined."

The appellants raise in this Court the single, very narrow question of whether it was proper to issue a declaratory judgment without ruling on the demurrer. The appellants, having sought a declaration and having received one adverse to their position as a matter of law, now seek to establish that the demurrer was intended only to test the justiciability of the controversy and the suitability for resolution by a declaration of the questions presented by the petition. We think that Judge Clapp did not err to the prejudice of the appellants in making the declaration at the time he made it.

Ordinarily the only place a demurrer has in the declaratory process is to challenge the legal availability of the remedy sought to be used. In *Shapiro v. County Comm'rs,* 219 Md. 298, 301-03, Judge Prescott for the Court said:

"In actions for declaratory judgments or decrees, as in actions generally, a demurrer admits all of the alleged facts that are well pleaded.
* * *

"It should be borne in mind that a demurrer is rarely appropriate in a declaratory judgment action. Where a bill of complaint shows a subject matter that is within the contemplation of the relief afforded by the declaratory decree statute, and it states sufficient facts to show the existence of the subject matter and the dispute with reference thereto, upon which the court may exercise its declaratory power, it is immaterial that the ultimate ruling may be unfavorable to the plaintiff. The test of the sufficiency of the bill is not whether it shows that the plaintiff is entitled to the declaration of rights or interest in accordance with his theory, but whether he is entitled to a declaration at all; so, even though the plaintiff may be on the losing side of the dispute, if he states the existence of a controversy which should be settled, he states a cause of suit for a declaratory decree." (Citation omitted.)

The reason is plain why a demurrer should be used in declaratory judgment actions only to challenge the legal availability or appropriateness of the remedy.

"Where the plaintiff's pleading sets forth an actual or justiciable controversy, it is not subject to demurrer since it sets forth a cause of action, even though the plaintiff may not be entitled to a favorable declaration on the facts stated in his complaint; that is, in passing on the demurrer, the court is not concerned with the question whether the plaintiff is right in a controversy, but only with whether he is entitled to a declaration of rights with respect to the matters alleged." 22 Am. Jur. 2d *Declaratory Judgments,* § 91 (1965).

In *Wilson v. Board of Retirement, etc.* (Cal.), 319 P. 2d 426, 428-30, the court pointed out that under California practice a motion for judgment on the pleadings, if it attacks the sufficiency of a complaint to state a cause of action, is tantamount to a general demurrer, and held that if the complaint seeking a declaration is legally sufficient and alleges facts and circumstances showing that a declaratory adjudication is appropriate,

it is error for the court to sustain a demurrer. The Court quoted with approval *Anderson on Declaratory Judgments,* page 816, to the effect that where "the material allegations of the complaint are constructively admitted, and there is no issue of fact to be decided, a declaratory judgment may properly be granted on the pleadings," and *Manufacturers and Traders Trust Co. v. Bell,* 59 N. Y. S. 2d 615, 616, as saying what was earlier held in *German Masonic Temple Ass'n v. City of New York* (N. Y.), 18 N. E. 2d 657:

> "Where, however, it is found that the complaint states a good cause of action for a declaratory judgment and the facts are not in dispute, a declaratory judgment should be pronounced upon the disputed question of law, even though such declaration is not in accord with the declaration asked for by the plaintiff."

In Maryland this Court has said time and again that seldom, if ever, in a declaratory judgment proceeding should a demurrer be sustained or the bill or petition dismissed without a declaration one way or the other of the rights of the parties. See *Myers v. Chief of Fire Bureau,* 237 Md. 583, 590-91, where we said:

> "The court below sustained a demurrer to the petition, and made no declaration of rights. We have stated in, at least, five recent cases that demurrers rarely should be sustained or bills dismissed *without a declaration of the rights of the parties,* when declaratory judgment relief is prayed. *Md. Committee v. Tawes,* 228 Md. 412; *Reed v. Pres. of North East,* 226 Md. 229; *John B. Robeson v. Gardens,* 226 Md. 215; *Shapiro v. County Comm.,* 219 Md. 298; *Case v. Comptroller,* 219 Md. 282. This is not only the rule here, but elsewhere. See the authorities cited in *Case, supra* (219 Md. 288). The test to be applied when a demurrer is filed to a declaratory judgment action is set forth in *Shapiro, supra* (219 Md. pp. 302, 303)." (Emphasis added.)

*See Case v. Comptroller,* 219 Md. 282, 288 (citing authorities in other jurisdictions); *Mohr v. Universal C. I. T. Corp.,* 216 Md. 197, 211; and *Armiger v. Lewin,* 216 Md. 470, 478.

Judge Clapp recognized and obeyed the applicable law when he said:

> "It would seem to me that rather than sustaining the demurrer and dismissing the Bill, we would all be in a better position if I indicate that had this been an ordinary suit of law the demurrer would have been sustained but being a petition for declaratory judgment a decree will be entered declaring the rights of the parties."

Judge Clapp in effect granted a summary declaratory judgment, and we think he was justified in so doing. It would have been error to have sustained the demurrer, since there was a justiciable controversy and have served no good purpose to have overruled it since there was no dispute of fact. Even though no formal motion for summary judgment under the rules was made, there was before the court enough to justify its action in granting a summary declaratory judgment.

In *Fletcher v. Flournoy,* 198 Md. 53, 56-57, the appeals were from summary judgments. The Court, speaking through Judge Markell, said:

> "The question now presented is whether the action of the court in granting summary judgment constitutes reversible error, even if it appears, in accordance with the rules, that in fact there is no genuine dispute as to any material fact. We think not. A motion for a summary judgment, like a supporting or opposing affidavit, is not a pleading (*Molesworth v. Schmidt,* 196 Md. 15, 20, 75 A. 2d 100, 102) ; it is only a motion. That a motion is not always an indispensable prerequisite to obtaining a summary judgment is illustrated by the provision in Rule 4 (a), *'Where appropriate, the court on the hearing may render judgment for the opposing party even though he has not filed a cross-motion for summary judgment.'* In the Federal Rules of Civil Procedure Rule 56 (a), authorizing a motion for summary judgment, does not specify any 'ground' for the motion, but Rule 56 (c), like Maryland Rule

4 (a), makes it the ground for judgment, *i.e.,* for granting the motion, 'that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.' The Maryland Summary Judgment rules are 'based on Rule 56 of the Federal Rules of Civil Procedure, with certain changes to adapt it to the existing Maryland procedural system.' *Reporter's Explanatory Notes,* Code, 1947 Supp., p. 2113. In general, the effect of the changes in Maryland was not to restrict or narrow, but to broaden, the federal rule." (Emphasis added.)

In *Frush v. Brooks,* 204 Md. 315, the appellant relied on the propositions that the plaintiff's affidavit in support of the motion for summary judgment was inadequate and insufficient, that a simple denial by the defendant of the whole of the plaintiff's claim, without more, was enough to prevent a summary judgment, and that the failure of the appellee to give notice to the appellant of the motion for summary judgment, as required by the rules, foreclosed the entry of such judgment as a matter of law. The Court found no merit in any of these contentions, and at page 322, after referring to other things (including the reliance of the Maryland Rules on the Federal Rules as to summary judgment), said as to the last contention:

"There is no substance to the argument that when the second motion for a summary judgment was filed, the failure to give notice to the appellant, as required by Rule 3 (b), prevented the court from validly granting the motion. When the declaration was filed, the appellee gave the fifteen day notice called for by Rule 3 (a) in such case. One motion with accompanying notice having been made, the failure to give a second notice, as part of an unnecessary second motion, cannot be treated as fatal. *The court had jurisdiction of the parties and the subject matter and if it had granted a summary judgment of its own motion, this alone would not affect an otherwise valid judgment. Hamburger v. Standard Lime & Stone Co.,* 198 Md. 336. The appellant does not claim that, before the motion

for summary judgment was granted, she was not afforded an opportunity for her attorney at that time to present her side of the case to the court. She does allege that there was no 'formal' hearing and that, since no second notice was given, this adds up to an absolute bar to the entry of the summary judgment. A formal hearing is not a requisite under the rules. It is enough if the court hears both sides before it passes on the matter. There is no claim that the court did not hear and consider both sides of the case before it acted." (Emphasis added.)

Borchard, *Declaratory Judgments,* 369-70 (2d Ed. 1941), says:

"We are now familiar with actions for a summary declaratory judgment, brought under Rule 56 [of the Federal Rules] or in analogy thereto. * * * The court will scrutinize the pleadings, the affidavits, if any, and the proffered evidence, to determine whether an issue of fact is disputed and is susceptible of proof. If it thinks that there is a genuine issue as to a material fact * * * a summary judgment would be improper." (Footnotes omitted.)

Borchard, *op. cit.,* p. 432, says further:

"A question has been raised by a series of cases in New York, whether a motion to dismiss a complaint or a motion for judgment on the pleadings may be entertained and granted in an action for a declaratory judgment, or whether, as in *Neubeck v. McDonald* [220 N. Y. S. 761], the trial court, in the exercise of its discretion, should refrain from entertaining such a motion until the trial shall have clarified the facts and enabled the court to determine whether the complaint has any basis in fact or law. Since such motions are entertained in actions for coercive relief, there is no reason whatever why they should be rejected in declaratory actions. *Where motions are granted it indicates that the court* either finds no 'cause of action'

or lacks jurisdiction or *can decide on the face of the pleadings, without the taking of evidence, that either plaintiff or defendant is right,* a decision which is appealable. On the other hand, where the court refuses to entertain or grant the motion, it is apparent that the court is unable to determine the issue presented by the motion on the complaint or the pleadings and wishes to hear evidence from both sides before making up its mind. *There is no basis, therefore, for the suggestion that the declaratory action in this respect differs from any other proceedings."* (Footnotes omitted and emphasis added.)

In the case before us we think Judge Clapp permissibly found that there was no genuine dispute of fact and that the answer to the contentions of the parties turned solely on questions of law which the parties had agreed to submit to the court. This being so, there was every reason to declare how the controlling law governed the essentially undisputed facts. *American Auto Ins. Co. v. Indemnity Co.* (E. D. Pa.), 108 F. Supp. 221, *aff'd* 228 F. 2d 622.

The appellants' present claim that there existed a genuine factual dispute is inaccurate. There is no dispute as to the operative facts which led to the filing of the petition and which are therein alleged. The claimed dispute is as to legislative and administrative history, and the only facts as to these proffered are not challenged by the apellees and, as we indicated earlier, lend as much support to the appellees' interpretation of the statutes as they do to that of the appellants.

A statute is not made unclear or ambiguous because one side in a controversy, in order to obtain a desired result, gives its words a meaning they do not on their face appear to have. If the words of a statute, given their normal meaning, are plain and sensible the legislature will be presumed to have meant the meaning the words import. The court will not substitute for literal intent a real intent unless the literal words of a statute say something the legislature could not possibly have meant. *Amalgamated Ins. v. Helms,* 239 Md. 529, 535. Rules and methods of construction and interpretation, including legislative history and administrative practice, are resorted to for the pur-

pose of resolving an ambiguity, not for the purpose of creating it. We had occasion to repeat the established law in *Falcone v. Palmer Ford,* 242 Md. 487, 493-94:

> "It is established beyond doubt that the construction and interpretation of statutes is for the court and not the jury to decide. *Aravanis v. Eisenberg,* 237 Md. 242, 259; *Bethlehem Steel Co. v. Munday,* 212 Md. 214, 220; *Emery v. F. P. Asher, Jr., & Sons, Inc.,* 196 Md. 1; *Vogelsang v. Sehlhorst,* 194 Md. 413; *Belt v. Marriott,* 9 Gill 331. It is similarly established that it is necessary and proper to construe a statute only when and where the statute is ambiguous and of doubt- ful meaning, *Height v. State,* 225 Md. 251; *Pressman v. Barnes,* 209 Md. 544, 558, and that it is only when and where construction is necessary that resort should be had to evidence of contemporaneous or practical construction or custom or usage. *Armco Steel v. State Tax Comm'n,* 221 Md. 33; *Bouse v. Hutzler,* 180 Md. 682; *Balto. County v. White,* 235 Md. 212; 82 C.J.S. *Statutes* § 357 (1953).

> "We find the provisions of the Retail Installment Sales Law here applicable and pertinent to be plain and unambiguous and their meaning clearly to be perceived from a reading of the words used by the Legislature. Therefore, although the court erred in not itself con- struing the statutes and in allowing evidence of prac- tical construction and usage relative to them to be of- fered, the errors were not prejudicial because the court should have directed a verdict for Palmer Ford as a matter of law."

The record shows that the Council has proceeded to final decision on some of the rezoning applications it reconsidered. Our holding and opinion in the present case are limited to find- ing no prejudicial error in Judge Clapp's making the declaration he made at the time and in the posture of the case when he made it and do not decide or control the legality or correctness of the final decisions in those cases.

*Judgment affirmed, with costs.*